90 So.2d 719

### AMERICAN LIFE INSURANCE CO. et al.

v.

### Claude SHELL.

### 6 Div. 958.

Supreme Court of Alabama.

Sept. 13, 1956.

Rehearing Denied Nov. 29, 1956.

Noble J. Russell, Decatur, and Deramus, Fitts, Johnston & Mullins, Birmingham, for appellants.

Hare, Wynn & Newell; Birmingham, and Ling & Bains, Bessemer, for appellee.

STAKELY, Justice.

This is a suit for libel by Claude Shell (appellee) against the American Life Insurance Company and its President, Thomas W. Wert (appellants), for publishing the following alleged defamatory matter by writing it in a letter to the plaintiff and sending a copy thereof to a Mr. Forsyth, a business associate of the plaintiff. The letter is as follows.

"American Life Insurance Company

"Birmingham 3, Alabama
"September 20, 1952

"Thomas W. Wert
"President

"Mr. Claud Shell
"Bueno Vista Hotel
"Biloxi, Mississippi

"Dear Sir:
"On September the 4th, I wrote you that I had been informed that you stated to one Forsyth, that after you brought the $15,-000.00 suit against the American Life we paid you $10.00 in settlement of the suit, but that this check was blind and we passed to you under the table $15,000. You have not replied to my letter.

"Now if you or anyone else makes the statement that we paid you any sum whatsoever than the $10.00 check, directly or indirectly you are an infamous liar and a cowardly cur and knew you were lying when such statement was made.
"Yours etc.,
"/s/ Thos. W. Wert."

The case went to the jury on Counts AA as amended, BB as amended and CC as amended. Count AA as amended alleges that the letter made the basis of the law suit was published at Mt. Pleasant, Texas, where it was read by one Forsyth. In addition to alleging that Forsyth read the alleged libelous letter, a copy of which is attached to and made a part of Count AA as amended, the plaintiff further alleges in Count AA as amended that he suffered special damage to his earning capacity and his reputation was impaired.

In Count BB as amended plaintiff adopts all of Count AA as amended and adds thereto certain allegations with respect to an alleged cancellation by one Forsyth of an agency contract which Forsyth allegedly had entered into with an insurance company of which plaintiff was general agent.

Count CC as amended is substantially the same as Count AA as amended except that Count CC as amended seeks to set up publication in Birmingham, Alabama.

All three of the counts on which the case went to the jury contained allegations showing that the word "we" in the letter referred to Thomas W. Wert and American Life Insurance Company, a corporation. In each count it was further alleged that "It was known to said Forsyth when he received said copy of said letter that the plaintiff had made the statement that 'we' (meaning Thomas W. Wert or the American Life Insurance Company or both) had paid him a sum other than said $10.00 check directly or indirectly. * * *"

Trial of the case resulted in a verdict for the plaintiff in the sum of $35,260. There was a motion for a new trial which the court overruled. The appeal here is from the judgment and the ruling of the court on the motion for a new trial.

I. It is argued by the appellants that the epithets applied to the plaintiff in the complaint were conditional, being prefaced with the statement, "Now if you or anyone else makes the statement that we paid you any sum whatsoever than the $10.00 check * * *." It is the position of the appellants that the charge being conditional in its form, there is no actionable quality in the charge.

██ Our investigation fails to show any Alabama case which throws any light on the question here presented and there are only a few cases so far as we can ascertain where the courts have dealt with

the subject. The appellants rely on a case decided in 1842, McKee v. Ingalls, 4 Scam. 30, 5 Ill. 30. We feel, however, that the rule stated in 53 C.J.S., Libel and Slander, § 9, p. 47 is the rule which we should apply. We quote the rule as follows.

"*In conditional form.* Where the charge is conditional in its form, the actionable quality of the imputation depends on the facts assumed in the conditional clause; and, if defendant makes the charge to depend on a fact which he has stated conditionally but which is known to be true, it is equivalent to a direct charge and actionable."

In all of the counts on which the case was tried it is alleged as follows: "And plaintiff avers that it was known to the said Forsyth when he received said copy of said letter that the plaintiff had made the statement that 'we' (meaning Thomas W. Wert or the American Life Insurance Company or both) * * *.", had paid him a sum other than said $10 check directly or indirectly. Accordingly, we consider that in view of the context alleged, which is that Forsyth knew the charge to be true, it is a plain assertion that the plaintiff was "an infamous liar and a cowardly cur and knew you (the plaintiff) were lying when such statement was made." Clark v. Zettick, 153 Mass. 1, 26 N.E. 234; Ruble v. Bunting, 31 Ind.App. 654, 68 N.E. 1041. Although we are dealing here with a question of pleading, it may be well to note in order that the case may be better understood that the court not only required the plaintiff to plead that the condition was met but also required proof tending to show that the condition was met and so charged the jury in the oral charge.

Upon a careful consideration of the matter we, therefore, are of the opinion that the court was not in error in overruling the demurrer to the foregoing counts of the complaint which raise the point that the charge was conditional and therefore not actionable.

II. Plaintiff's evidence tended to show that when Forsyth, who is referred to in the letter which is made the basis of the suit, got a copy of this letter, he terminated his business association with the plaintiff, whereby the plaintiff claims to have suffered a great business loss. This claim for special damages is set up in Count BB as amended.

The proof of the plaintiff tended to show that on May 1, 1952, a written contract was executed between Southern States Life Insurance Company on the one hand and Claude E. Shell (plaintiff here) on the other, designating Shell as General Agent for Southern States Life Insurance Company and agreeing to pay him 75% of commissions on the type of insurance therein described. On September 4, 1952, there was executed a written contract wherein the Southern States Life Insurance Company was the company and Claude E. Shell was the General Agent and C. M. Forsyth, the agent, and specifying therein that C. M. Forsyth, the agent, would be paid a commission equaling 60% of the same commissions on the same type of insurance when and as produced by Forsyth, thereby leaving to Shell his over-riding commission of 15% of premiums of insurance as produced by Forsyth under the aforesaid contract of September 1952. It is claimed that as a proximate consequence of the publication of the aforesaid libel, Forsyth cancelled the aforesaid written contract of September 4, 1952, thereby depriving the plaintiff of the over-riding commission of 15% of all insurance premiums upon insurance when and as produced by Forsyth under said contract. This is the loss which the defendants claim to be conjectural and speculative in nature and for that reason not recoverable and of which the court allowed proof.

Forsyth testified in the case. His testimony tends to show the circumstances upon which it could be calculated with reasonable accuracy what the plaintiff would have earned under his agency contract. The testimony of Forsyth tended to show that he had taken the same crew of men who were serving him at the time he terminated

his relationship with the plaintiff and put them to work selling insurance for another insurance company, the Anchor Life Insurance Company, under circumstances which were substantially the same, thereby proving by actual results what was capable of being produced by the agency force which was lost to the plaintiff as the result of the wrongful act of the defendants. His testimony tended to show that the $250,000 of premiums income which he did produce in the next six months was almost exactly the same which he and his crew of men could have produced under the agency contract with the plaintiff had it not been cancelled.

The various elements which made up the substance of Forsyth's testimony were brought out, including the names of the salesmen, the clauses in the policies, the type of prospects who would be approached and the sales commissions. It was shown that Forsyth and his crew specialized in selling what is termed "military insurance". In this type of insurance on proper authorization the government deducted the amount of the premiums from the pay of the man in the service and sent in the premiums. It was shown that 2,750 applications were procured of a potential premium income of about $300,000, which would be $120 a year per policy or $10 per month. This type of insurance had a ready sale and when all of the men in some particular camp had been solicited the crew started working again on that camp when a new group of men came into the camp. It was shown that this type of insurance was sold for the Anchor Life Insurance Company and was comparable to the type of insurance sold by Southern States Life Insurance Company, because the policies were substantially the same, the territory was comparable and the conditions for the sale of such insurance were in other respects comparable.

Upon a careful consideration of the matter we feel satisfied that the proof was admissible to give the jury a basis upon which the amount of plaintiff's loss could be estimated. If the testimony of the plaintiff was believed by the jury, the jury had the right to find that the defendants by their wrongful act destroyed the plaintiff's life insurance agency and having done this cannot then claim that the plaintiff cannot recover what he lost under the contract just because the very act of destruction by the defendants made it difficult for the plaintiff to prove what he would have made of the agency. It is true that damages may not be determined by mere speculation or conjecture, but evidence tending to show the extent of the damages as a matter of just and reasonable inference, should be admissible where the fact of damage has been proved. Wilson v. Stocks, 231 Ala. 58, 163 So. 606.

In support of the views which we have expressed, we call attention to the case of Story Parchment Co. v. Paterson Parchment Co., 282 U.S. 555, 51 S.Ct. 248, 250, 75 L.Ed. 544. In this case the Supreme Court of the United States, speaking through Justice Sutherland, laid down the rule of damages where the defendants' wrongful act has made it difficult for the plaintiff to show with reasonable certainty the amount of his loss. The court spoke as follows.

"Where the tort itself is of such a nature as to preclude the ascertainment of the amount of damages with certainty, it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts. In such case, while the damages may not be determined by mere speculation or guess, it will be enough if the evidence show the extent of the damages as a matter of just and reasonable inference, although the result be only approximate. The wrongdoer is not entitled to complain that they cannot be measured with the exactness and precision that would be possible if the case, which he alone is responsible for making, were otherwise. [Citing cases]. As the Supreme Court of

Michigan has forcefully declared, the risk of the uncertainty should be thrown upon the wrongdoer instead of upon the injured party. Allison v. Chandler, 11 Mich. 542, 550–556. That was a case sounding in tort, and at page 555 the court, speaking through Christiancy, J., said:

" 'But shall the injured party in an action of tort, which may happen to furnish *no* element of certainty, be allowed to recover no damages (or merely nominal), because he cannot show the exact amount with certainty, though he is ready to show, to the satisfaction of the jury, that he has suffered large damages by the injury? Certainty, it is true, would thus be attained; but it would be the certainty of injustice. * * *

" 'Juries are allowed to act upon probable and inferential, as well as direct and positive proof. And when, from the nature of the case, the amount of the damages cannot be estimated with certainty, or only a part of them can be so estimated, we can see no objection to placing before the jury all the facts and circumstances of the case, *having any tendency* to show damages, or their probable amount; so as to enable them to make the most intelligible and probable estimate which the nature of the case will permit.'

" * * * Cases will often occur in which it is evident that large damages have resulted, but where no reliable data or element of certainty can be found by which to measure with accuracy the amount. Rejecting the view that in such cases the jury should give only nominal, that is, in effect, no damages, leaving the injured party without redress, the court said ([Gilbert v. Kennedy, 22 Mich. 117, at] page 130):

" 'To deny the injured party the right to recover any actual damages in such cases, because they are of a nature which cannot be thus certainly measured, would be to enable parties to profit by, and speculate upon, their own wrongs, encourage violence and invite depredation. Such is not, and cannot be the law, though cases may be found where courts have laid down artificial and arbitrary rules which have produced such a result.' * * * "

The decision thereafter states that such damages include those which:

" 'Cannot be ascertained by a fixed rule, but must be matter of *opinion* and probable estimate. And the adoption of any arbitrary rule in such a case, which will relieve the wrongdoer from any part of the damages, and throw the loss upon the injured party, would be little less than legalized robbery.

" 'Whatever of uncertainty there may be in this mode of estimating damages, is an uncertainty caused by the defendant's own wrongful act; and justice and sound public policy alike require that he should bear the risk of the uncertainty thus produced. * * *.'
" * * * 'The constant tendency of the courts is to find some way in which damages can be awarded where a wrong has been done. * * *' "

The next quotation from the opinion states another highlight of the modern rule which has been quoted in practically every modern review and text:

" 'The rule that damages, if uncertain, cannot be recovered, applies to their nature, and not to their extent. If the damage is certain, the fact that its extent is uncertain does not prevent a recovery.' "

See also McCormick on Damages (1935), p. 97 et seq.; 33 Amer.Jur. 188 ; Washington Times v. Bonner, 66 App.D.C. 280, 86 F.2d 836, 110 A.L.R. page 393; Harris v. National Union of Marine Cooks, 116 Cal.App.2d 759, 254 P.2d 673; Ditus v. Beahm, 123 Colo. 550, 232 P.2d 184; 25 C.J.S., Damages, § 28, p. 495; 15 Am.Jur. p. 410; Restatement of the Law of Torts,

Vol. III, p. 316; Restatement of the Law of Torts, Vol. IV, § 912, p. 574.

The appellants cite the cases of Union Refining Co. v. Barton, 77 Ala. 148 and Deslands v. Scales, 187 Ala. 25, 65 So. 393, but we do not regard these cases as authority here because the evidence in those cases did not furnish sufficient basis for estimating the damage sustained with reasonable certainty. These cases were quoted in the case of Lambert v. Jefferson, 34 Ala. App. 67, 36 So.2d 583, 589, where the court, quoting from 15 Amer.Juris, § 157, p. 573, said: " 'According to the weight of authority, however, a recovery may be had for such losses where they are reasonably certain in character * * *.' "

We do not consider that the court was in error in admitting the testimony of Forsyth because it gives a basis for a reasonable certainty on which the jury could estimate the loss which Shell sustained when his agency contract with Forsyth was destroyed.

■ III. It is earnestly contended by the appellants that Forsyth could not give his opinion on the loss which plaintiff sustained when the contract which he had with Forsyth was destroyed. We find no merit in this contention. From our examination of the record we think that Forsyth sufficiently stated the facts on which he based his opinion.

In Birmingham Amusement Co. v. Norris, 216 Ala. 138, 112 So. 633, 637, 53 A.L.R. 840, it is said:

"Hypothetical questions—meaning questions designed to elicit the opinion of an expert witness on a given condition or state of facts of which he has no personal knowledge—must of course be based upon a hypothetical statement of that condition or state of facts, which must correspond with the facts in evidence, or with one phase of such facts. Parrish v. State, 139 Ala. 16, 43, 36 So. 1012. But this rule has no application to questions calling for the opinion or conclusion of an expert

who has personal knowledge of the subject of the inquiry."

See also Watson v. Hardaway-Covington Cotton Co., 223 Ala. 443, 137 So. 33; Malone-McConnell Real Estate Co. v. J. B. Simpson Audit Co., 197 Ala. 677, 73 So. 369.

■ IV. Did the evidence make out a case against the corporate defendant? The court held that the jury had the right to infer that the libelous letter was written within the scope of the authority of the President of the corporation, Thomas W. Wert. And further had the right to infer that the action of Thomas W. Wert was ratified by the corporation. In so ruling we consider that the court acted correctly.

The defendant Thomas W. Wert testified as a witness in the case. His testimony showed that he had written the alleged libelous letter and mailed it in Birmingham and sent one copy to Forsyth in Texas and another copy to the defendant in care of the Southern States Life Insurance Company. At the time Thomas W. Wert was President of the company and his testimony showed that the writing of the letter was in effect a corporate action written to protect and advance the company's interest. Its nature and the subject which it treated and the purpose it was written to accomplish were all business and corporate in character. He further testified that the letter was not personal. It is our judgment that this letter and the two letters which preceded it and the advertisement in newspapers which followed it, show that it was the act of the President in support of the corporation's position and advancement of its business. He testified that he wrote the letter in the office of the President of the American Life Insurance Company during office hours and on company stationery, using the company's postage. In answer to questions propounded him by his attorney he answered as follows:

"A. I don't think I ever met Mr. Shell over two or three times in my recollection.

"Q. Did you have a thing in the world against him? A. Not on earth.

\* \* \* \* \* \*

"Q. Are you referring to the suit by Powell against the American Life Insurance Company? A. Yes, sir.

"Q. I am asking you if the reference you made which the jury heard—accusing you or insulting you, you are referring to the suit of Powell against American Life filed by Wilkinson and Skinner? A. Yes, sir.

\* \* \* \* \* \*

"Q. To whom were you referring (in your letter of September 20th), when you said, 'we'? A. The American Life and myself."

His testimony showed that Shell had been State Manager of the American Life Insurance Company in Mississippi. He had built up a debit of $15,000 a month. The company cancelled his contract and would not pay Shell what he considered they owed him. He employed attorneys and sued for his money. He sued the American Life Insurance Company and nobody else but the American Life Insurance Company. He was notified by his lawyers that the case had been compromised for $2,500 and he executed a release for $2,500, his lawyers deducting their fee and paying him the balance. This was on February 1, 1950. Shell received a letter written by the President of the American Life Insurance Company, Thomas W. Wert, on September 4, 1952. We set out the letter as follows:

"Sept. 4, 1952

"Mr. Claude E. Shell
"Buena Vista Hotel
"Biloxi, Mississippi

"Dear Mr. Shell:
"This morning I was informed that a Mr. C. M. Forsyth, a former agent of ours, made a statement to our Mr. Coffman and our Mr. Craven, on August the 30th, about 9:30 P.M. in the Alps Cafe in Mt. Pleasant, Texas, in substance that you had told him that you had once brought a suit against this Company for $15,000.00 and that to settle the matter we gave you a check for $10.00 but that it was merely a blind and we passed to you under the table $15,000.00 cash.

"While I can't bring myself to believe that you made such a statement, I would like to know if you made such a statement or anything like it.

"As you know the only payment we made was the $10.00 and I first refused to give that amount and if you would so far forget yourself and make the statement then your income tax return will show it and our records would show an outgo of that amount.

"Now unless this matter is immediately cleared up I propose to have the Income Tax people to have Mr. Forsyth brought to Birmingham and testify under oath whether you made the statement and if you did why you didn't make a return of it.

"Yours very truly,

"Copy to Shell
"C/o Southern States
"Forsyth at 108 E. 3rd St., Mt. Pleasant, Texas."

Shell did not reply to this letter and on September 20, 1952, Mr. Wert wrote the letter made the basis of this suit. There was an advertisement in the Decatur paper showing why Thomas W. Wert wrote the letter.

At this point we refer to the case of Choctaw Coal & Mining Co. v. Lillich, 204 Ala. 533, 86 So. 383, 385, 11 A.L.R. 1014, a case of libel against a corporation. In the case here referred to the libelous words were not written by the defendant or on its stationery or in its behalf. The defendant had a typewritten list of coal miners absent from work on the previous day which the defendant had entitled "Employees Not Working July 18." One Verg West, the defendant's assistant mine superintendent, took a piece of chalk or some paint and wrote on the board above

the sheet the words, "List of Slackers." As shown by the facts stated above, the foregoing case differs in many respects from the case at bar. However, in the Choctaw case, supra, the opinion states:

"Had the company been advised of the writing, and that it was done by its servant in its behalf, its failure to repudiate the act with reasonable promptness would no doubt have amounted to approval and ratification."

In the case at bar the defendant corporation ran newspaper advertisements rehashing the controversy with Shell and reaffirming that it was false for anyone to claim that he had been paid more than $10 to settle a case which was based on the position that the American Life Insurance Company had frozen him out of the insurance debit which he had developed in Mississippi

Thomas W. Wert testified expressly that after a directors' meeting he had authority to publish the advertisement which contained a photostatic copy of the check to the plaintiff and directly described what the advertisement calls a false attack on the company by Claude E. Shell and his attorneys. The publication of these advertisements actually amounts to a ratification. It seems to us that they served the dual purpose not only of ratification of what Wert did but demonstrate that his action in the first place was corporate in character. 13 A.L.R. 1143; Wells v. Payne, 141 Ky. 578, 133 S.W. 575; Interstate Transit Lines v. Crane, 10 Cir., 100 F.2d 857.

V. We do not consider that the verdict is against the weight of the evidence in the matter of damages. The jury had the right to find under the evidence that the defendants put the plaintiff out of business, a business which he was able to establish by contract as the result of a lifetime of experience at the head of this type of agency force. In 35 A.L.R.2d 259 et seq., there is a collection of libel verdicts held

excessive and not excessive. It seems to us that the libel in the case at bar could be regarded as more vicious and attended with a greater money loss than some of the verdicts upheld in the foregoing compilation of authorities. We do not consider that the court erred in overruling the motion to set aside the verdict and grant the defendants a new trial.

There are many, many assignments of error in this case but what we have said in our judgment covers the rulings of the court which are the bases of these various assignments. And so we have not felt that it was necessary to make express reference to the various assignments.

It results that the judgment of the lower court is due to be affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON and MERRILL, JJ., concur.