My difference with the majority is simply that I would hold that damages here should be assessed under the "benefit" rule.
The issue presented in the present appeal is whether this Court will recognize an action for "wrongful pregnancy" and award full and complete damages. The action for wrongful pregnancy is "generally brought by the parents of a healthy, but unwanted, child[,] against a pharmacist or pharmaceutical manufacturer for negligently filling a contraceptive prescription, or against a physician for negligently performing a sterilization procedure or abortion." Phillips v. UnitedStates, 508 F. Supp. 544, 545 n. 1 (D.S.C. 1981). See Robertson,Civil Liability Arising from "Wrongful Birth" Following anUnsuccessful Sterilization Operation, 4 Am. J.L. Med. 131 (1978); Comment, Pregnancy After Sterilization: Causes ofAction for Parent and Child, 12 J. Fam. L. 635 (1972). The majority of jurisdictions addressing the wrongful pregnancy issue have recognized that parents are entitled to bring such a claim. Phillips v. United States, 508 F. Supp. at 549. Today, this Court refuses to follow the majority rule, and fails to permit a doctor to be held fully responsible for his or her negligence. I would follow the majority rule, and permit the parents in the present case to recover complete damages for wrongful pregnancy.
The majority opinion raises two major arguments against granting full damages for wrongful pregnancy. First, the majority asserts that damages for wrongful pregnancy are unascertainable. Second, a more emotionally charged argument is asserted that public policy recognizes the value of human life and this value precludes any action for wrongful pregnancy.
The resolution of the question of a physician's liability for wrongful pregnancy, however, does not require "intrusion into the domain of moral philosophy." Troppi v. Scarf, 31 Mich. App. 240, 187 N.W.2d 511, 513 (1971). Public policy arguments in such cases often serve as a smokescreen hiding the true issue. The ultimate issue is whether a physician is liable for negligently failing to perform an operation or for negligently misrepresenting the nature of an operation.
Dr. Mullendore asserts that recovery for wrongful pregnancy is against public policy. The thrust of this argument is that the "sanctity of life precludes a cognizable action in law."Speck v. Finegold, 268 Pa.Super. at 354, 408 A.2d at 503
(1979). It is urged that life, as a matter of law, cannot be damaging to either a child or a parent. Many of the early cases, implicitly accepted by the majority opinion, relied on public sentiment against abortion and sterilization and the sentiment in favor of procreation. See Glietman v. Cosgrove,49 N.J. 22, 227 A.2d 687 (1967). "The great end of matrimony is not the comfort and convenience of the immediate parties, . . . but the procreation of progeny." Shaheen v. Knight, 6 Lyc. 19, 23, 11 Pa.D. C.2d 41, 45 (1957).
The majority asserts that "a normal healthy life should not
be the basis of a compensable wrong." I agree. Nevertheless, the purpose of an action for wrongful pregnancy is not to recover for the life of the child, but the "diminution in the family wealth that necessarily resulted in a hardship to the other family members." Sherlock v. Stillwater Clinic,260 N.W.2d 169 (Minn. 1977).
The majority also contends that a child whose parents recover damages for wrongful pregnancy will be an "emotional bastard." First it should be noted that the majority permits some, but not all, damages suffered for wrongful pregnancy. Will a child feel any less an "emotional bastard" if its parents recover the damages permitted *Page 725 
by the majority rather than full and complete damages? Furthermore, it is difficult to believe that a child will feel like an "emotional bastard" in either case. How many members of society who were born when birth control was unacceptable, learned that their births were unexpected and sensed their births had undesired effects on the family treasury? If this Court were to grant the full measure of damages for "wrongful pregnancy" the economic pressures of raising an unexpected child would be taken off the parents, permitting them to concentrate on giving the child the love and care he or she needs.
Furthermore, the Supreme Court of the United States recognized that the right to privacy protects a husband and wife from unwarranted intrusions into the fundamental decisions of a family concerning contraception and abortion, in Roe v.Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); Doe v.Bolton, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973);Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678,14 L.Ed.2d 510 (1965). In light of such Supreme Court decisions, it cannot be maintained that family planning and contraception are against public policy.
 "To say that for reasons of public policy, contraceptive failure can result in no damage as a matter of law ignores the fact that tens of millions of persons use contraceptives daily to avoid the very result which the defendant would have us say is always a benefit, never a detriment."
Troppi v. Scarf, 31 Mich.App. at 253, 187 N.W.2d at 517.
The majority asserts that recognizing full damages for wrongful pregnancy "meddles with the concept of life and the stability of the family unit." I believe that the failure of this Court to recognize this cause of action intrudes on the constitutionally protected right of the Boones to determine the size of their family. The Court in Speck v. Finegold, paraphrasing Custodio v. Bauer, 251 Cal.App.2d 303,59 Cal.Rptr. 463 (1967), noted: "the birth of an [unanticipated] child may be less than a blessing in an economically deprived family, particularly if the sterilization had been intended to prevent the birth of a physically defective or mentally retarded infant." 268 Pa.Super. at 360, 408 A.2d at 506.
Certain public policies favor granting complete damages for wrongful pregnancy. Society has an interest in seeing that operations are properly performed and that patients are properly advised. The recognition of a cause of action encourages physicians to accurately perform these tasks by penalizing those physicians who fail to observe customary standards of medical practice. See Phillips v. United States,508 F. Supp. at 551.
Perhaps the most difficult issue in wrongful pregnancy actions is the ascertainment of damages. Several theories of damages have been proposed by other courts. The doctor asks this Court to find, that as a matter of law, the benefits accruing to the parents of a healthy child outweigh the economic and emotional detriment of having an unwanted, unanticipated child. See Terrell v. Garcia, 496 S.W.2d 124
(Tex.Civ.App. 1973), cert. denied, 415 U.S. 927, 94 S.Ct. 1434,39 L.Ed.2d 484 (1974); Rieck v. Medical Protective Co.,64 Wis.2d 514, 219 N.W.2d 242 (1974). Other jurisdictions take the approach that all costs and expenses of raising such a child, including emotional distress and the actual cost of having an infant, are recoverable. See, e.g., Custodio v. Bauer,251 Cal.App.2d 303, 59 Cal.Rptr. 463 (1967). A third view of damages, taken by the majority of this Court, is that the parents may recover only damages for pregnancy-related costs and expenses, and damages for pain and suffering. Coleman v.Garrison, 327 A.2d 757 (Del.Super.Ct.), aff'd, 349 A.2d 8 (Del. 1974). Finally, the fourth view of damages, which I would adopt, is the so called "benefit" rule of damages.
Under the "benefit" rule, parents may recover for damages proximately caused by the physician's negligence, including pregnancy-related expenses and the economic damages to the family of the birth and rearing of an additional child. These *Page 726 
damages may be offset, however, by the benefits accruing to the family on the birth of the child. Section 920 of the Restatement(Second) of Torts (1979), states:
 "Where the defendant's tortious conduct has caused harm to the plaintiff or to his property and in so doing has conferred upon the plaintiff a special benefit to the interest which was harmed, the value of the benefit conferred is considered in mitigation of damages, where this is equitable. [Emphasis added.]"
This rule permits the factfinder flexibility in determining the extent of benefits accruing to the parents in different circumstances. As the court in Troppi v. Scarf,31 Mich.App. at 256-57, 187 N.W.2d at 518-19, points out, the trier of fact must have the power to evaluate the benefit according to all the facts and circumstances in a particular case. "Family size, family income, age of the parents, and marital status are some, but not all of the factors" which the trier of fact may consider in awarding damages. Id.
 "Consider, for example, the case of the unwed college student who becomes pregnant due to a pharmacist's failure to properly fill her prescription for oral contraceptives. Is it not likely that she has suffered far greater damage than the young newlywed who, although her pregnancy arose from the same sort of negligence, had planned the use of contraceptives only temporarily, say, while she and her husband took an extended honeymoon trip? Without the benefits rule, both plaintiffs would be entitled to recover substantially the same damages.
 "Application of the benefits rule permits a trier of fact to find that the birth of a child has materially benefited the newly wed couple, notwithstanding the inconvenience of an interrupted honeymoon, and to reduce the net damage award accordingly. Presumably a trier of fact would find that the `family interests' of the unmarried coed has [sic] been enhanced very little."
The major difficulty in applying the "benefit" rule is that comment 6 to Section 920 of the Restatement indicates that benefits to one type of interest may not offset damages to another type of interest. Nevertheless, the benefit rule is rooted in the equitable principle of unjust enrichment. SeeSherlock v. Stillwater Clinic, 260 N.W.2d at 176. In a cause of action for "wrongful pregnancy," it would be unfair and would result in unjust enrichment to strictly apply the "same interest" limitation. Since the economic burden and emotional distress of rearing an unexpected child are inextricably related to each other, I would hold that the reasonable costs of rearing a child may be offset by the value of the economic and emotional benefits conferred on the parents by a child. SeeTroppi v. Scarf, 31 Mich.App. at 258, 187 N.W.2d at 518.Accord, Sherlock v. Stillwater Clinic, 260 N.W.2d at 176. In the case of a normal, healthy child, these expenses usually do not extend beyond the age of majority when the parents are no longer under an obligation of support. Id. These damages may be offset by the value of the child's aid, comfort and society.Id.
The majority also asserts that such a measure of damages is unascertainable and entirely speculative. Nonetheless, the pregnancy-related expenses, medical and hospital bills, lost wages and so forth are readily ascertainable. Likewise, the cost of rearing of a child is an expense routinely computed by juries. Mrs. Boone's damages for pain and suffering are ascertainable, as this court recently recognized in Taylor v.Baptist Medical Center, 400 So.2d 369 (Ala. 1981). The only uncertainty arises from the application of the "benefits" rule. While the exact dollar value of the benefits accruing to the parents is difficult to determine, it is enough that the plaintiff shows the extent of damages as a matter of reasonable and justifiable inference. Story Parchment Co. v. PatersonParchment Co., 282 U.S. 555, 51 S.Ct. 248, 75 L.Ed. 544 (1931);American Life Insurance Co. v. Shell, 265 Ala. 306,90 So.2d 719 (1956). The rule in Alabama is that when damages are not capable of being precisely measured, the amount of damages to be granted rests largely within the discretion of the jury. *Page 727 Summerlin v. Robinson, 42 Ala. App. 116, 154 So.2d 685 (1963). The most fundamental principle of tort law is that a party should recover for injuries caused by the wrongdoing of others. A party who is wronged should have an opportunity to present to the jury the question of what are reasonable and proper damages. This Court and courts of other jurisdictions have permitted the question of damages to be submitted to a jury in analogous situations. See, e.g., Smith v. Richardson, 277 Ala. 389, 171 So.2d 96 (1965) (recovery of parents for permanently injured child); Sellnow v. Fahey, 305 Minn. 375, 233 N.W.2d 563
(1975) (recovery for wrongful death). Juries have been able to comprehend and determine the amount of damages in similar situations, and are capable of determining fair and reasonable damages in an action for wrongful pregnancy.
An action for wrongful pregnancy, in which damages are measurable, may be distinguished from an action for "wrongful life," in which damages are said to be incalculable. It should be recalled that in an action for wrongful life, an action is brought on behalf of a child for negligently permitting the child to be born. See Elliott v. Brown, 361 So.2d 546 (Ala. 1978). Several courts have denied actions for wrongful life, based on the rationale that we cannot measure "the value of life with impairments against the nonexistence of life itself."Id. at 547 (quoting Gleitman v. Cosgrove, 49 N.J. 22,227 A.2d 687 (1967)); Dumer v. St. Michael's Hospital, 69 Wis.2d 766,233 N.W.2d 372 (1975). Justice Almon, speaking for this Court, has noted that there is no legal right not to be born. Elliottv. Brown, 361 So.2d at 548. Nevertheless, several courts which have refused to recognize an action for wrongful life have recognized an action for wrongful pregnancy. See Phillips v.United States, 508 F. Supp. 544 (D.S.C. 1981); Phillips v.United States, 508 F. Supp. 537 (D.S.C. 1980); Sherlock v.Stillwater Clinic, 260 N.W.2d 169 (Minn. 1977); Berman v.Allan, 80 N.J. 421, 404 A.2d 8 (N.J. 1979); Speck v. Finegold,268 Pa. Super. 342, 408 A.2d 496 (1979). These cases distinguish wrongful life actions in two ways. First, the courts state that whether it is better to be born with defects, or not at all, is beyond our current ability to understand or calculate. Second, and more important, is that a cause of action is not cognizable at law for the right not to be born. These courts have permitted recovery for wrongful pregnancy. A parent has the right not to have a child. Thus, a legal right has been damaged. Furthermore, damages for rearing a child are similar to damages already committed to the power and domain of the jury.
The appellee also contends that Mrs. Boone may not recover for wrongful pregnancy because she failed to mitigate damages by aborting the child or giving it up for adoption. The Michigan appellate court addressed this question in Troppi v.Scarf, 31 Mich. App. 240, 187 N.W.2d 511 (1971). The court eloquently stated this conclusion:
 "However, to impose such a duty upon the injured plaintiff is to ignore the very real difference which our law recognizes between the avoidance of conception and the disposition of the human organism after conception. . . . At the moment of conception, an entirely different set of legal obligations is imposed upon the parents. A living child almost universally gives rise to emotional and spiritual bonds which few parents can bring themselves to break.
 "Once a child is born he obviously should be treated with love regardless of whether he was wanted when he was conceived. Many, perhaps most, persons living today are conceptional accidents in the sense that their parents did not desire that a child result from the particular intercourse in which the person was conceived. Nevertheless, when the child is born, most parents accept him with love. That the plaintiffs accepted their eighth child does not change the fact that the birth of another child, seven years younger than the youngest of their previously born children, unbalanced their life style and was not desired by them." *Page 728