**KW PLASTICS, et al., Plaintiffs,**

v.

**UNITED STATES CAN CO., Defendant.**

**United States Can Co., Plaintiff,**

v.

**N. Kenneth Campbell, et al., Defendants.**

Nos. CIV. A. 99–D–286–N, CIV. A. 99–D–878–N.

United States District Court, M.D. Alabama, Northern Division.

Jan. 12, 2001.

Nicholas J. Cervera, Grady A. Reeves, Cervera, Ralph & Butts, Troy, AL, Ross B. Bricker, John F. Ward, Jr., Andrew A. Jacobson, Matt D. Basil, Jenner & Block, Chicago, IL, for Plaintiffs.

D. Frank Davis, Gerald P. Gillespy, Stephen J. Bumgarner, John E. Norris, Robert E. Battle, Burr & Foreman, Birmingham, AL, Richard F. Calhoun, Calhoun, Faulk, Watkins & Clower, Troy, AL, Anthony C. Valiulis, Rachel Feldstein, Deborah S. Bussert, Much, Shelist, Freed, Denenberg, Ament, Bell & Rubenstein, Chicago, IL, for Defendants.

### ORDER

DE MENT, District Judge.

Before the court are U.S. Can's Supplemental Objections to KW's Damage Evidence, which were filed December 12, 2000. KW filed a Response on December 29, 2000, and U.S. Can issued a Reply on January 9, 2001. After careful consideration of the arguments of counsel, the evidence designated in support of the respective positions of the parties, and the relevant law, the court finds that the objections are due to be sustained in part and overruled in part.

## I. INTRODUCTION

The court first turns to U.S. Can's argument that KW Plastics has failed to quantify its damages with the requisite certainty required by Alabama law. The court finds that U.S. Can's objections are due to be sustained in part and overruled in part.

The court then turns to the testimony proffered by KW's general manager, N. Kenneth Campbell, who will testify as to lost profits resulting from U.S. Can's alleged tortious interference with KW's prospective business relationships. These damages were allegedly caused by: (1) U.S. Can's attempt to enforce a non-compete agreement that the court has found to be essentially unenforceable under Illinois law; and (2) other impermissible activity. At this juncture, the court tentatively finds that the opinions that Campbell intends to express are not firmly grounded in personal knowledge. Moreover, the court tentatively finds that Campbell has not laid a sufficient foundation for expressing those opinions competently. Accordingly, U.S. Can's objection to Campbell's testimony is to be sustained conditionally, without prejudice for Campbell to testify at trial if he can cure these defects.

## II. QUANTIFICATION OF DAMAGES

■ Alabama law recognizes the tort of intentional interference with prospective business relationships. The elements of a claim include: (1) the existence of a contract or business relation; (2) the defendant's knowledge of the contract or business relation; (3) intentional interference by the defendant with the contract or business relation; and (4) proximate damages. *See Ex parte Alabama Department of Transportation*, 764 So.2d 1263, 1270 (2000). "It is the right to do business in a fair setting that is protected." *Utah Foam Prods., Inc. v. Polytec, Inc.*, 584 So.2d 1345, 1352–53 (Ala.1991).

■ In defining the scope of this cause of action, Alabama courts have relied on the Restatement (Second) of Torts. *See, e.g., Ex parte ALDOT,* 764 So.2d at 1270; *Barber v. Business Prods. Center, Inc.,* 677 So.2d 223, 228 (1996); *Gross v. Lowder Realty Better Homes & Gardens,* 494 So.2d 590, 598 (Ala.1986) (Torbert, J., concurring and dissenting in part). The Restatement divides recoverable damages for tortious interference into three categories: (1) the pecuniary loss of the benefits of the contract or the prospective relation; (2) consequential losses for which the interference is a legal cause; and (3) emotional distress or actual harm to reputation if either is reasonably to be expected to result from the interference. *See* RESTATEMENT (SECOND) OF TORTS § 774A (1979).

■ Under Alabama law, a plaintiff seeking damages must provide sufficient evidence for the jury to estimate lost profits with reasonable certainty. *See Oxford Furniture Companies v. Drexel Heritage Furnishings, Inc.,* 984 F.2d 1118, 1127–28 (11th Cir.1993) (applying Alabama law). A thorough discussion of this state's decision to adopt this standard and reject the "new business" rule would be tedious and unnecessary, although the court refers the parties to *Super Valu Stores, Inc. v. Peterson,* 506 So.2d 317, 326–33 (Ala.1987), which reads like a treatise on this point. Under the "reasonable certainty" requirement, "the loss of profits ... must be capable of ascertainment with reasonable, or sufficient, certainty, or there must be some basis on which a reasonable estimate of the amount of the profit can be made ...." *See Hillcrest Center, Inc. v. Rone,* 711 So.2d 901, 908 (Ala.1997) (quoting *Mason & Dixon Lines, Inc. v. Byrd,* 601 So.2d 68, 70 (Ala.1992)) (quoting *Paris v. Buckner Feed Mill, Inc.,* 279 Ala. 148, 182 So.2d 880, 881 (1966)).[1]

The Court has struggled in its attempts to define precisely what quantum of evidence a plaintiff must present to recover lost profits. On one hand, the Court has rejected the argument that damages cannot be proven without an expert witness, *see Hillcrest Center,* 711 So.2d at 907–08, and held that damages evaluations should not be policed in a manner that "would encourage breach of contract with new businesses," *Super Valu Stores,* 506 So.2d at 327, and held "that recovery will ensue despite the fact that damages cannot be calculated with mathematical certainty," *Mason & Dixon,* 601 So.2d at 70 (quoting *Morgan v. South Central Bell Telephone Co.,* 466 So.2d 107, 116 (1985)), and held that the wrongdoer should not escape liability on the grounds that its misconduct has made it difficult for the innocent plaintiff to precisely determine its loss, *see Super Valu Stores,* 506 So.2d at 328.

On the other hand, the Court recognizes that not every damage estimate proffered by the plaintiff passes scrutiny. "[D]amages may not be determined by mere speculation or conjecture," *Id.* at 328 (quoting *American Life Ins. Co. v. Shell,* 265 Ala. 306, 90 So.2d 719, 722 (1956)), but "must be a matter of just and reasonable inference," and must be evinced by "probable and inferential, as well as direct and positive proof." *Id.* (quoting *Story Parchment Co. v. Paterson Parchment Paper Co.,* 282 U.S. 555, 51 S.Ct. 248, 75 L.Ed. 544 (1931)).

There is no one correct way for proving damages. Each case must be judged on its facts. In this case, therefore, the court must ultimately evaluate the facts once they have been received. Just as the Alabama Supreme Court has done in the past, the court may look for guidance from persuasive cases in other jurisdictions, as well as to the opinions of learned commentators, in determining whether Plaintiff has

---

1. One appellate case suggests that a plaintiff must present "the best evidence available ... sufficient to afford a reasonable basis for estimating his loss." *Brendle Fire Equip., Inc. v. Electronic Eng'rs, Inc.,* 454 So.2d 1032, 1034 (Ala.Civ.App.1984). The Alabama Supreme Court, however, has cast doubt upon this standard by declining to embrace it. *See Med Plus Properties v. Colcock Constr. Group, Inc.,* 628 So.2d 370, 377 n. 2 (Ala.1993).

satisfied its burden. *See, e.g., id.* at 329–31 (other jurisdictions and treatise); *Med Plus,* 628 So.2d at 376 (treatises).

Several cases from other jurisdictions immediately surface. In one case, the Supreme Court of Texas held that largely speculative profits are unrecoverable. The court held that

> [p]rofits which are largely speculative, as from an activity dependent on uncertain or changing market conditions, or on chancy business opportunities, or on promotion of untested products or entry into unknown or unviable markets, or on the success of a new and unproven enterprise, cannot be recovered. Factors like these and others which make a business venture risky in prospect preclude recovery of lost profits in retrospect.... The mere hope for success of an untried enterprise, even when that hope is realistic, is not enough for recovery of lost profits. When there are firmer reasons to expect a business to yield a profit, the enterprise is not prohibited from recovering merely because it is new.... The focus is on the experience of the persons involved in the enterprise and the nature of the business activity, and the relevant market.

*Texas Instruments, Inc. v. Teletron Energy Management, Inc.,* 877 S.W.2d 276, 279–80 (1994). Similarly, an Ohio appellate court has held that "[w]here an employee of a company simply testifies that the damages amount to a certain sum, without explaining the breakdown of individual items, that testimony is nothing more than a conclusion." *See Kinetico, Inc. v. Independent Ohio Nail, Co.,* 19 Ohio App.3d 26, 482 N.E.2d 1345, 1352 (1984); *see also Frenchman & Sweet, Inc. v. Philco Discount Corp.,* 21 A.D.2d 180, 249 N.Y.S.2d 611, 614 (N.Y.App.Div.1964) ("[a]bsolute certainty of data upon which loss of future profits are to be estimated is not required but respondent must supply a more definite basis for computation.")

In addition to reviewing cases from within and without Alabama, the court finds further guidance from the writings of a leading commentator, whose works have been cited by the Court,[2] who has noted that profits may be proved through such evidence as: (1) a comparison of the experience of the plaintiff's own business before and after the interruption of its progress by the defendant's wrongful acts; (2) the plaintiff's subsequent experience after the wrongful interference with business has been eliminated; (3) the experience of comparable businesses engaged in the same activity; (4) the defendant's subsequent profit from enjoyment of a comparable opportunity; .and (5) industry averages.[3] *See* ROBERT DUNN, RECOVERY OF DAMAGES FOR LOST PROFITS §§ 5.5 to .17 at 391–423 (5th ed.1999).

The court presumes that the jury will properly assess damages when it is presented with sufficient evidence. The jury can fulfill its duties only if it receives all of the available, admissible damages evidence that the parties have to offer. *See Hickox v. Vester Morgan, Inc.,* 439 So.2d 95, 101 (Ala.1983). Not every plaintiff in every case can prove damages with reasonable certainty. Some evidence, while admissible as relevant, nevertheless will be insufficient. *See Med Plus,* 628 So.2d at 376–77 (distinguishing between "relevancy" and "reasonable certainty" as standards of proof). But, as a general rule, a motion in limine should not be used to deny the jury the opportunity to make this determination. As the United States Supreme Court has held, in an opinion that has been quoted by the Alabama Supreme Court:

> [W]hen, from the nature of the case, the amount of damages cannot be estimated with certainty, or only a part of them can be so estimated, *we can see no objection to placing before the jury all the facts and circumstances of the case, having any tendency to show damages, or their probable amount.*

**2.** *See, e.g., Super Valu Stores,* 506 So.2d at 329 (citing ROBERT DUNN, RECOVERY OF DAMAGES FOR LOST PROFITS 188, 196 (2d ed.1981)).

**3.** Some of these methods are more generally accepted than others.

*Super Valu Stores*, 506 So.2d at 328 (quoting *Story*, 282 U.S. at 563, 51 S.Ct. 248) (emphasis supplied).

 In this case, the court notes that there are strengths and weaknesses with Plaintiff's damages estimate.[4] First the strengths. KW can probably quantify with reasonable certainty its damages with respect to any delay in production of cans for Behr.[5] Under Alabama law, these damages are recoverable, provided that they were not caused solely by U.S. Can's attempt to enforce the non-compete through the judicial process. *See Sevier Ins. Agency, Inc. v. Willis Corroon Corp.*, 711 So.2d 995, 1001–02 (1998) (per curiam). *Cf. Cherry, Bekaert & Holland v. Brown*, 582 So.2d 502, 508 (1991). Plaintiff may have lost $X$ months of production that can be measured in relation to $Y$ units of production in subsequent months, *see* DUNN, *supra*, § 5.8 at 398, or $D$ dollars of administrative costs, etc.,[6] *see Utah Foam*, 584 So.2d at 1352. Similarly, there probably will be sufficient evidence presented to quantify damages with respect to KW's alleged loss of Sherwin–Williams ("SW")— at least for the 2000 and 2001 calendar years. *See* DUNN, *supra*, § 5.14 at 416.

KW may also seek, and potentially may receive, consequential damages in the broader market for the loss of business that is proximately caused by U.S. Can's tortious interference. "[I]f there is no desire at all to accomplish the interference and it is brought about only as a necessary consequence of the conduct of the actor engaged in for an entirely different purpose, his knowledge of this makes the interference intentional." RESTATEMENT (SECOND) OF TORTS § 767 cmt. d; *see also Employees' Benefit Ass'n v. Grissett*, 732 So.2d 968, 983–84 (1998) (Maddox, J., concurring in result) ("in tort the scope of liability is much broader than in contract, especially with respect to intentional torts. Almost all damages proximately flowing from the cause are recoverable; and, of course, punitive damages are recoverable in the appropriate aggravating circumstances."); *Vann v. McCord*, 22 Ala.App. 241, 114 So. 418, 419 (1927) (discussing proximate cause and consequential damages); *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1167–72 (3d Cir.1993) (applying and predicting New Jersey law with reference to RESTATEMENT (SECOND) OF TORTS § 767, cmt. d (1979)).

Thus, if U.S. Can's behavior was the "but for" cause of KW's inability to obtain the SW account—or even if it was the "but for" act that "thwarted [KW's] ability to adequately present its products and services"—and this interference proximately led to consequential damages in the broader market, then those broader damages are recoverable.[7] *See Utah Foam*, 584 So.2d at 1352–53; *Lightning Lube*, 4 F.3d at 1170–71; RESTATEMENT (SECOND) OF TORTS § 767, cmt. d (1979). If not, then U.S. Can's actions are irrelevant.[8]

---

4. The court will not exhaustively detail all that it has observed in the record. The parties know their respective strengths and weaknesses.

5. That does not mean, however, that KW has adequately done so at this stage. *See infra* Part III (explaining that Campbell's testimony may lack foundation and personal knowledge and, therefore, might be inadmissible at trial).

6. In his deposition, Campbell claimed damages for this delay in production, yet he stated that he has not quantified the same. (Campbell's Dep. at 15.) This is problematic. *But see infra* Part IV.

7. KW has never presented a theory that a delay in production with Behr could have led to $24 million in damages.

8. The Court has adamantly rejected the proposition that a plaintiff who alleges tortious interference with business relations may not recover unless the plaintiff proves that, "but for the alleged interference ... it would have been awarded the contract." *Utah Foam*, 584 So.2d at 1352. This is because "[i]t is the right to do business in a fair setting that is protected." *Id.* at 1353.

The Court mocked the arguments of a defendant that argued "that the only damage from interference with a business relationship is the failure to be awarded the contract. This ... is a far too narrow approach.... *The*

But while U.S. Can may be liable for all consequential damages proximately flowing from any tortious interference with KW's prospective business relationship with SW, there are doubts that KW's inability to market its plastic cans to customers other than SW or, temporarily, Behr, is the proximate cause of any action by U.S. Can. Much of KW's claim is based upon the theory that: (1) SW is a "market setter" in the paint can industry;[9] (2) SW was ready to receive sample shipments of KW's paint cans; (3) U.S. Can wrongly provided SW with damaging misinformation about KW's workmanship; (4) therefore, SW cancelled KW's shipments; (5) this fact became known within the industry; (6) other customers, following the lead of SW, developed an aversion to KW; and (7) KW lost millions of sales, and it will be several years before KW can restore its reputation and recoup those customers.

■ The problem is that Campbell's testimony appears to rely upon hearsay, and Campbell apparently has disavowed damages with respect to many known customers. (Campbell's Dep. at 16–17, 40, 42, 50–51, 68–69.) Other evidence strongly suggests that "U.S. Can's allegation that KW can't compete in this marketplace" has never become "a broad-based fact." (Coleman's Dep. at 216–17.) KW refers to no depositions or affidavits from other possible customers, who were approached by KW or its mule, Behr, and declined to purchase as a result of U.S. Can's actions. Additionally, as a matter of law, U.S. Can's attempt to enforce the agreement through the judicial process is insufficient evidence, standing alone, to support a compensatory damages claim. *See Cherry*, 582 So.2d at 508. Thus, if any customer chose not to deal with KW solely because of this pending civil action, then those resulting "damages" are unrecoverable.

Despite these potential problems, challenges to the sufficiency of causation or foundation are better aired through cross-examination prior or, if necessary, through an appropriate order prior to closing arguments or post-trial.[10] *See Super Valu Stores*, 506 So.2d at 331. Although the

damage from interference can occur regardless of the fact that the company would not have been awarded the contract, and it can also take other forms." *Id.* (emphasis supplied). Such damages might, for example, include money spent in an attempt to obtain the business.

*Utah Foam*, which is a compensatory and consequential damages case, is almost squarely on point with the facts of this case—at least with respect to KW's broader damages claim. KW does not allege that Sherwin–Williams merely refused to deal with KW. *Cf. Barber v. Business Prods. Center, Inc.*, 677 So.2d 223, 227–28 (1996). Rather, KW hopes to prove that U.S. Can interfered with KW's ability to have a fair shot with SW, that this interference tarred KW's reputation in the broader market, and this prevented KW from obtaining business from the broader market. If so, then KW is entitled to consequential damages under Alabama law. *See Utah Foam*, 584 So.2d at 1352–53.

U.S. Can believes that this is a harsh result. Maybe so. On the other hand, this holding is grounded in almost 100 years of precedent, *see id.* at 1353 (citing *Sparks v. McCrary*, 156 Ala. 382, 47 So. 332 (1908)), and is consistent with the legislature's declaration that "[m]erchants are held to the highest of ethical standards." *Scott v. Dixie Homecrafters*, 125

F.Supp.2d 1311, 1314 (M.D.Ala.2000) (citing *Shutter Shop, Inc. v. Amersham Corp.*, 114 F.Supp.2d 1218, 1228 (M.D.Ala.2000)) (citing Ala. Code § 7–1–201(19) (1975) and Richard E. Speidel, *The Characteristics and Challenges of Relational Contracts*, 94 Nw. U.L. Rev. 823 (2000)).

Needless to say, the court's sole concern is with applying the law as it exists.

9. A "market setter" is a large player in a certain industry whose actions are closely watched and often followed by others.

10. The court finds that KW has abandoned any claim for damages from the broader market beyond or Behr with respect to such things as "monies expended to try to obtain the business, investments in material or equipment in anticipation of getting the business, or some other form of damage." (U.S. Can. Supp. Obj. at 17.) Campbell's deposition makes it clear that he is not asking for this type of relief. Moreover the court finds as a matter of law that any such projection for money spent over a 6–year period to obtain contracts that might not have been signed, *cf. Utah Foam*, 584 So.2d at 1353, is too speculative for recovery.

court has doubts about some of KW's broader damages claim, U.S. Can's objection to limit KW's presentation is due to be sustained in part and overruled in part.[11]

## III. PERSONAL KNOWLEDGE, FOUNDATION, AND THE PROPER SCOPE OF OPINION TESTIMONY

The court now turns to U.S. Can's objections that Campbell's testimony fails to satisfy the requirements of the Federal Rules of Evidence for admissible testimony. These objections are well-taken, and Campbell's testimony is conditionally excluded. Campbell may testify only if he remedies the defects that have surfaced in his deposition.

■ A party seeking to admit lay opinion testimony must satisfy the court, by a preponderance of the evidence, that the testimony meets the appropriate standards for admissibility under the Federal Rules of Evidence. *See Bennett v. PRC Public Sector, Inc.,* 931 F.Supp. 484, 490 (S.D.Tex. 1996) (Rule 701). *Cf. Allison v. McGhan Med. Corp.,* 184 F.3d 1300, 1312 (11th Cir. 1999) (Rule 702). Rule 701 of the Federal Rules of Evidence, which took effect in December 2000, provides that a witness, who is not testifying as an expert, may offer opinions or inferences that are:

(a) rationally based on the perception of the witness,

(b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and

(c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

FED. R. EVID. 701.

■ The witness also must meet the "personal knowledge" requirements set forth in Rule 602, which provides that:

A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the witness's own testimony. This rule is subject to the provisions of Rule 703, relating to opinion testimony by expert witnesses. *Id.* 602.

For guidance in interpreting new Rule 701, the court considers the notes of the advisory committee. The rules have the effect of a statute, and the notes of the drafters provide persuasive authority for interpretation. There is no evidence that the committee intended to eliminate the requirements that the witness "have perceived with his senses the matters on which his opinion is based" and satisfy the court that there is some "rational connection between the witness' opinion and his perceptions." 29 CHARLES ALAN WRIGHT & VICTOR JAMES GOLD, FEDERAL PRACTICE AND PROCEDURE § 6254 at 126 (1997). Moreover, new Rule 701 incorporates the requirements of Rule 602, thus mandating that the witness satisfy the elements of proper sensory perception, comprehension, present recollection, and ability to testify as to the matter perceived. *See id.* at 126–27. A witness who cannot recall the matters perceived cannot offer any opinions, for his testimony would be little more than speculation or conjecture. *See id.* at 127, 134–35.

With respect to new Rule 701(c), the advisory committee has stated with approval that "most courts have permitted the owner or officer of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert." FED. R. EVID. 701 advisory committee note (citing *Lightning Lube, Inc. v. Witco Corp.,* 4 F.3d 1153 (3d Cir.1993)); *see also* 7 WIGMORE ON EVIDENCE § 1944 (Chadbourne rev. ed.1978) (criticizing courts that have disallowed opinion testimony on "the most straightforward and practical questions.") "Such opinion testimony," the committee stated, "is admitted not because of experience, training or knowledge within the realm of

---

11. U.S. Can never filed for summary judgment on KW's claims.

an expert, but because of the particularized knowledge that the witness has by virtue of his or her position in the business. *The amendment does not purport to change this analysis.*" FED. R. EVID. 701 advisory committee note (emphasis supplied).

New Rule 701, therefore, should be interpreted in a manner consistent with the Third Circuit's holding in *Lightning Lube.*[12] In that case, the court allowed a quick lube franchisor to offer his lay opinion about future business that he believed he lost as a result of the defendant's tortious interference. The report included estimates for lost future profits from franchises that had not yet been established. *See Lightning Lube,* 4 F.3d at 1174–75. The franchisor's damages estimate was based on facts and figures generated from his "knowledge and participation in the day-to-day affairs of his business," and partially in reliance upon the reports of an accountant. *Id.* at 1175.

■ *Lightning Lube* holds that a lay damages witness may offer a damages report only if he has personal knowledge of the components and materials of the report; and either (1) he helped prepare the report based on personal knowledge; or (2) the contents of the report are admissible themselves. *See id.* ("it is logical that in preparing a damages report the author may incorporate documents that were prepared by others, while still possessing the requisite personal knowledge or foundation to render his lay opinion admissible under Rule 701."); 29 WRIGHT & GOLD, *supra,* § 6254 at 130 n.12 ("it seems probable that the records in question would have been considered admissible under Rule 803(6) had the issue been raised.")

In other words, the accountant can crunch numbers, but the numbers, information, assumptions, and reasoning throughout the report must have been supplied by the witness, if he hopes to testify as to the same. If Campbell cannot "do the math," then he cannot testify as to what the "bottom line number" should be, unless the number is contained in a report that is independently admissible.[13]

Put another way, a lay opinion "based on hearsay is permitted under Rule 701 if the hearsay is admissible." *Id.* at 130. "By restricting lay opinions to those based on the perception of the witness, the implication of Rule 701 is that lay opinion may not be based on hearsay." *Id.* at 128; JOHN L. CONLON, TRIAL HEARSAY: OBJECTIONS AND EXCEPTIONS §§ 2.470, 28.133 at 32–33, 546 (2d ed.2000) (same). The Eleventh Circuit and others accept this view. *See United States v. Gold,* 743 F.2d 800, 817 (11th Cir.1984); *TLT–Babcock, Inc. v. Emerson Elec. Co.,* 33 F.3d 397, 400 (4th Cir.1994); *United States v. Garcia,* 994 F.2d 1499, 1507 (10th Cir.1993); *Burlington Northern Railroad Company v. Nebraska,* 802 F.2d 994, 1004–05 (8th Cir.1986); *Teen–Ed, Inc. v. Kimball Intern. Inc.,* 620 F.2d 399, 403 (3d Cir.1980) (witness's opinions must be "well founded on personal knowledge and susceptible to specific cross examination.")

■ Moreover, "Rule 701's requirement that the opinion be 'rationally based on the perception of the witness' demands more than that the witness have perceived something firsthand; rather, it requires that the witness's perception provide a truly rational basis for his or her opinion." *Asplundh Mfg. Div. v. Benton Harbor Eng'g,* 57 F.3d 1190, 1201 (3d Cir.1995). "The nature and extent of the contacts and the observations of the witness should be as detailed as possible, but it must be recognized that an adequate foundation for opinion testimony by a layman is established when the testimony discloses that the witness through contacts with the sub-

---

12. In its most recent pleading, U.S. Can refers the court to the district court's opinion in *Lightning Lube.* The court believes that exclusive reliance on the lower court's findings is misplaced, given the advisory committee's approval of the court of appeals' holding.

13. This does not mean that Campbell cannot testify as to everything that he provided his accountant, who, in turn, could testify as to what $X$ times $Y$ equals.

ject had a reasonable opportunity to form an opinion." *United States v. Pickett,* 470 F.2d 1255, 1258 (D.C.Cir.1972).

An opinion is admissible only if the court determines that an adequate foundation has been established. *See* 29 WRIGHT & GOLD, *supra,* § 6254 at 145 (collecting cases). The district court determines, under Rule 104(b), whether an adequate foundation has been established to support a finding of rational perception. The court also determines, under Rule 104(a), whether the proffered opinion is based on personal knowledge and will be helpful to the jury. *See United States v. Rea,* 958 F.2d 1206, 1216–17 (11th Cir.1992) (discussing FED. R. EVID. 104).

■ With these principles in mind, the court turns to Campbell's proposed testimony, and finds that it is due to be conditionally excluded. Campbell, as a Rule 701 witness, proposes to testify about lost profits caused by U.S. Can's alleged tortious interference with KW's prospective business relations. Campbell's testimony is grounded in his dozens of years of experience maintaining and growing his plastic and resin business in Troy, Ala., which allows him to testify under Rule 701 about his business's revenues, costs, profit margins, and the like. *See* FED. R. EVID. 701. Like the corporate executive in *Lightning Lube,* Campbell also states that he has kept abreast of market trends, thereby establishing the basis and personal knowledge of his opinions about lost future profits resulting from lost future customers. In arriving at a damages estimate of $24 million over the course of six years, Campbell supposedly extrapolated damages in conjunction with his accountant, Rocky Rothfelder, who merely "crunched the

numbers" based on assumptions and data supplied by Campbell.

The court finds that there are several problems with this proposed testimony. First, Campbell's conclusory statements about KW's profit margin, costs of production, equipment and labor costs, depreciation, total cost, and the like are inadmissible without a better foundation.[14] *(E.g.,* Campbell's Dep. at 81, 85–86, 109, 143–45, 152–61, 165, 168, 172–73.) A Rule 701 witness cannot simply assert conclusions; his testimony must rest upon an antecedent predicate and foundation. *See Kinetico,* 482 N.E.2d at 1352. Campbell's proffered testimony, if given in a manner similar to that in his deposition, would not be helpful to the jury.[15] *See* FED. R. EVID. 701; 29 WRIGHT & GOLD, *supra,* § 6254 at 145–46.

Second, the court notes that while Campbell may have sufficient personal knowledge based upon his own experience in the industry to provide some type of economic testimony and data, it does not necessarily follow that he has personal knowledge sufficient to project lost profits for six years into the future *on the basis of the loss of customers that KW never had.* For example, it appears that Campbell may not have personal knowledge to support his proffered testimony about the supposedly impending consumer shiftover from metal to plastic cans, which allegedly was thwarted and delayed by U.S. Can's interference.[16] *See In re General Instrument Corp. Securities Litigation,* 2000 WL 1741937 at *3–4 (N.D.Ill.2000); *Allbritton v. Colonial Life & Accident Ins. Co.,* 2000 WL 769225 at *6 (N.D.Tex.2000).

In addition, Campbell's testimony is due to be excluded to the extent that the damages calculation used discount factors[17]

---

**14.** Again, the court does not chronicle all of the places where Campbell's proposed testimony falls short. The above-cited references are some examples.

**15.** If Campbell does not know, for example, whether his labor costs were $8 or $12/hour, he cannot offer testimony on that point.

**16.** This does not mean that there is not admissible evidence of the same, such as market

reports, trade journals, or treatises. (Campbell's Dep. at 123–24.) *See* FED. R. EVID. 803(17), (18).

**17.** A "discount factor" is economic jargon that describes a way to value future income in terms of present dollars. One typically adjusts for the expected rate of inflation, the cost of capital and so forth.

supplied by Campbell's law firm, Jenner & Block, over which he appears to have no ability to explain or apply himself. (Campbell's Dep. at 171, 178.) *See Sowell v. Butcher & Singer, Inc.,* 926 F.2d 289, 298–99 (3d Cir.1991). Campbell could not reproduce many of the figures listed in the report generated in conjunction with Rothfelder, nor could he discuss how he arrived at the bottom-line numbers contained in the calculation. (Campbell's Dep. at 171, 183–85.) Overall, Rothfelder's report appears to be hearsay, and Campbell cannot substitute his testimony for his accountant's unless he has sufficient personal knowledge of the facts contained therein. At this juncture, the court finds that he does not. *See Allison,* 184 F.3d at 1312.

A projection of lost profits will often, though not always, require some form of expert testimony.[18] *See* DUNN, *supra,* § 7.1 at 532. Based upon the foundation laid at this point, the court is not satisfied that Campbell is competent to express some of the opinions inherent in his 6–year damages forecast, or even with respect to SW or Behr for the 2000–01 calendar years.[19]

## IV. ORDER

Based on the foregoing, it is CONSIDERED and ORDERED that U.S. Can's Objections to KW's Damage Evidence are hereby OVERRULED IN PART AND SUSTAINED IN PART, as set out herein.

It is further ORDERED that, if KW Plastics intends to seek recovery with respect to the Behr account, then KW must amend its interrogatory response within three business days of this order to quantify its damages with all possible precision. If U.S. Can believes that it needs to depose Campbell again on this issue, then it

is hereby ORDERED that Campbell present himself for deposition at the Chicago, Ill., law offices of Much Shelist Freed Denenberg Ament & Rubenstein, P.C., on or before Tuesday, January 23, 2001, at the request of U.S. Can.[20]

If this deposition takes place, then it is further ORDERED that KW Plastics show cause, if any there be, why it should not be taxed all reasonable costs and attorney's fees associated with both of Campbell's depositions. *See* FED. R. CIV. P. 37(c)(1). Said showing shall be made on or before February 1, 2001.

---

18. The court expresses no opinion on whether, given the manner in which damages were calculated, Campbell's estimates fail to provide the jury with a reasonably certain basis for quantification. (Campbell's Dep. at 143–45, 153–58.)

19. With respect to its claim for damages from lost profits from customers other than Behr, the court finds that KW seasonably supple-

mented its damage forecasts, after taking the amount of time necessary to consider the depositions of various U.S. Can witnesses and to make sure that the report was as accurate as possible. Sanctions under Rule 16, 26 or 37 are inappropriate.

20. This deadline may be extended at the request of U.S. Can. Refreshments and snacks shall be made available.