Rachael Nicole Elliott, by her father and next friend, brought an action against Harry G. Brown, M.D., for breach of contract and for negligence in improperly performing a vasectomy on her father, resulting in plaintiff's conception and "wrongful life." The plaintiff was born with serious deformities. This appeal is taken from a judgment of the trial court granting the defendant's motion to dismiss for failure to state a cause of action upon which relief can be granted. We affirm.
Defendant-physician, Harry G. Brown, performed a surgical procedure on Therman Elliott, plaintiff's father, known as a vasectomy. According to the complaint, Therman Elliott underwent the sterilization to prevent his wife from becoming pregnant, a condition which would endanger her health. With knowledge of the plaintiff's mother's condition, defendant allegedly guaranteed the effectiveness of the operation. The defendant conducted post-operative examinations of Therman Elliott's semen specimens and allegedly informed him that the operation was a complete success. Relying on the defendant's assurances, Therman Elliott and his wife resumed marital relations which resulted in the plaintiff's conception.
The present action was consolidated for trial with suits filed by the plaintiff's parents against the defendant. Only the plaintiff's suit was dismissed. The suits by Therman Elliott and his wife are in no way involved with this appeal.
Plaintiff does not claim that the defendant's alleged preconception negligence caused her deformity. See Renslow v.Mennonite Hospital, 67 Ill.2d 348, 10 Ill.Dec. 484,367 N.E.2d 1250 (1977); Jorgensen v. Meade Johnson Laboratories,483 F.2d 237 (10th Cir., 1973). In fact, plaintiff does not contend that defendant knew or should have known that, if born, she would have a deformity. The complaint noticeably lacks allegations that the sterilization was to benefit the plaintiff by protecting the health of any future born children. Rather, reduced to its essence, the plaintiff's claim is that the defendant's alleged negligence caused her birth; i.e., "wrongful life."
 ". . . What the infant — Appellant alleges is that the breach of duty led proximately to her birth — the maturing of the harm — . . ." Appellant's brief, p. 9.
"Wrongful life is essentially an action for damages based on the defendant's negligence in wrongfully allowing a particular child to be born." Note, An Action for Wrongful Life Brought onBehalf of the Wrongfully Conceived Infant, 13 Wake Forest L.Rev. 712, 716 (1977). Plaintiff urges this court to recognize for the first time a cause of action on her behalf for "wrongful life."
Several courts have addressed this issue and the vast majority have declined to recognize a cause of action for "wrongful life" on behalf of the child. Stills v. Gratton,55 Cal.App.3d 698, 127 Cal.Rptr. 652 (1976); Gleitman v. Cosgrove,49 N.J. 22, 227 A.2d 689 (1967); Stewart v. Long Island CollegeHospital, 30 N.Y.2d 695, 332 N.Y.S.2d 640, 283 N.E.2d 616
(1972); Karlsons v. Guerinot, 57 A.D.2d 73, 394 N.Y.S.2d 933
(1977); Dumer v. St. Michael's Hospital, 69 Wis.2d 766,233 N.W.2d 372 (1975). The only court to uphold a cause of action for "wrongful life" on behalf of the child is an intermediate appeals court in New York in the recent decision of Park v.Chessin, 60 A.D.2d 80, 400 N.Y.S.2d 110 (1977).
Most of the cases declining to recognize a cause of action for "wrongful life" have done so on the theory that it is impossible to calculate damages. In Gleitman v. Cosgrove,supra, the majority opinion stated the following:
 ". . . Damages are measured by comparing the condition plaintiff would have been in, had the defendants not been negligent, with plaintiff's impaired condition as a result of the negligence. The infant plaintiff would have us measure the difference between his life with defects against the utter void of nonexistence, but it is impossible to make such a determination. This Court cannot weigh the value of life with impairments against the nonexistence of life itself. *Page 548 
By asserting that he should have not been born, the infant plaintiff makes it logically impossible for a court to measure his alleged damages because of the impossibility of making the comparison required by compensatory remedies. As a recent commentator put the matter:
 "`[N]o comparison is possible since were it not for the act of birth the infant would not exist. By his cause of action, the plaintiff cuts from under himself the ground upon which he needs to rely in order to prove his damage.' Tedeschi, `On Tort Liability for "Wrongful Life,"' 1 Isreal L.Rev. 513, 529 (1966)." 227 A.2d at 692.
We agree with the above quoted portion of the Gleitman
opinion and feel that it adequately states the reasoning of this court with these additional comments. Fundamental to the recognition of such a cause of action is the notion that the defendant has violated some legal right of plaintiff's and as a result she has suffered injury. However, a legal right not to be born is alien to the public policy of this State to protect and preserve human life. The right of women in certain cases to have abortions does not alter the policy. Instead, in light of this right the recognition of such a cause of action raises more questions than it answers. In the words of one jurist:
 ". . . Implicit, beyond this claim against a physician for faulty advice, is the proposition that a pregnant woman who, duly informed, does not seek an abortion, and all who urge her to see the pregnancy through, are guilty of wrongful injury to the fetus, and indeed that every day in which the infant is sustained after birth is a day of wrong. To recognize a right not to be born is to enter an area in which no one could find his way." Gleitman v. Cosgrove, 227 A.2d at 711 (Weintraub, C.J., dissenting in part).
We hold that there is no legal right not to be born and the plaintiff has no cause of action for "wrongful life."
Furthermore, in Park v. Chessin, supra, the only case to recognize a cause of action on behalf of the infant for "wrongful life," the court apparently recognized the novel "right of a child to be born as a whole, functional human being." Additionally, in that case there was a causal connection between the alleged negligence and the deformity. Here no such connection exists. In that case, the majority opinion stated the following:
 ". . . decisional law must keep pace with expanding technological, economic and social change. Inherent in the abolition of the statutory ban on abortion . . . is a public policy consideration which gives potential parents the right . . . not to have a child. This right extends to instances in which it can be determined with reasonable medical certainty that the child would be born deformed. The breach of this right may also be said to be tortious to the fundamental right of a child to be born as a whole, functional human being."
We are not unaware of the rapid progress made in medical science in recent years. Many mysteries of the how and why of human development have succumbed to medical knowledge. However, we do not understand that the state of the art in the medical profession is such that it can be said that no child need be born deformed. With deference to the court in Park v. Chessin,supra, we do not feel that it is possible to say that technological, social and economic changes merit the recognition of a cause of action on behalf of the plaintiff for "wrongful life."
Upon what legal foundation is the court to determine that it is better not to have been born than to be born with deformities? If the court permitted this type cause of action, then what criteria would be used to determine the degree of deformity necessary to state a claim for relief. We decline to pronounce judgment in the imponderable area of nonexistence.
This decision should not be construed as any precedent whatsoever where preconception negligence causes deformity, and where absent the negligence, normal birth would have probably occurred. *Page 549 
The judgment of the trial court is hereby affirmed.
AFFIRMED.
TORBERT, C.J., and BLOODWORTH, FAULKNER and EMBRY, JJ., concur.