416 So.2d 718 (1982)
Repsie Rhea BOONE
v.
Dr. M. M. MULLENDORE.
80-423.
Supreme Court of Alabama.
June 30, 1982.
*719 M. Clay Alspaugh of Hogan, Smith & Alspaugh, Birmingham, for appellant.
William M. Bouldin of Guin, Bouldin, Porch & Alexander, Russellville, for appellee.
John T. Mooresmith, Mobile, for amicus curiae Medical Ass'n of the State of Ala.
TORBERT, Chief Justice.
This is a medical malpractice case wherein the trial court granted summary judgment in favor of the defendant on the ground that plaintiff, Repsie Rhea Boone, is limited in her recovery of damages to the amount of the settlement with the hospital measured in terms of her actual medical expenses incurred in giving birth. Mrs. Boone appeals and we reverse.
In 1976, Repsie Rhea Boone visited Dr. M. M. Mullendore, complaining of cramps and bloating in her abdomen. On July 6, 1976, Mrs. Boone was admitted to Colbert County Hospital for exploratory surgery. During the surgery, Dr. Mullendore discovered and removed cysts in Mrs. Boone's Fallopian tubes and ovaries. After the surgery, Dr. Mullendore dictated an operative summary and procedure that stated that "the left and right [Fallopian] tubes were removed." Additionally, the plaintiff also alleges that Dr. Mullendore informed her that her Fallopian tubes had been removed and that she was sterile. As a result of this representation, Mrs. Boone did not use contraceptive methods. She became pregnant, however, and in April 1978 delivered a healthy child.
The Boones brought suit against Colbert County Hospital and Dr. Mullendore for negligently representing that her Fallopian tubes had been removed and that she was sterile, or, in the alternative, for negligent failure to remove the Fallopian tubes. Mrs. Boone sought compensatory damages for medical expenses and costs reasonably incurred in the rearing of the child. At the pretrial hearing, Mr. Boone withdrew as a party plaintiff and following the pre-trial hearing, Mrs. Boone reached a pro tanto settlement with the hospital for $1,500.00, which was conceded to be the amount of her medical expenses. Subsequently, Dr. Mullendore moved for, and the trial court granted, a summary judgment on the ground that, as a matter of law, Mrs. Boone could not recover more than the settlement amount for actual medical expenses incurred in giving birth. This appeal followed.
*720 The issue on appeal is what damages may be recovered by a parent as a result of the negligent treatment, or the negligent misrepresentation of a doctor that the parent is incapable of having children. For the reasons set forth below, we hold that the trial court erred in limiting damages to out-of-pocket medical expenses.
Mrs. Boone contends that a health care provider should be subject to liability in damages for negligence that results in the wrongful birth of a child. At this point, it will be helpful to make distinctions in the terminology used by the parties. A claim for "wrongful birth" is one brought against a physician who "failed to inform parents of the increased possibility that the mother would give birth to a child suffering from birth defects ... [thereby providing] an informed decision about whether to have a child." Phillips v. United States, 508 F.Supp. 544, 545 n.1 (D.S.C.1981) (quoting Comment, 8 Hofstra L.Rev. 257, 257-58 (1979)). A claim for "wrongful life" is one by which a child seeks recovery for being born with infirmities. See, Elliot v. Brown, 361 So.2d 546 (Ala.1978), wherein this Court refused to recognize a cause of action for "wrongful life." This case is, instead, more suited to a traditional medical malpractice, negligence action. In the court below, the plaintiff alleged that Dr. Mullendore was negligent in failing to remove her Fallopian tubes or, in the alternative, was negligent in representing that her Fallopian tubes had been removed and that she was sterile. Some jurisdictions have defined actions of this type as an action for "wrongful pregnancy."
The present action, therefore, is focused upon the issue of whether Dr. Mullendore negligently performed surgery upon Mrs. Boone and made misrepresentations to her as to her future capability to conceive a child, thus causing her to rely upon such statements and to become pregnant. A number of courts have been faced with this issue. See, Phillips v. United States, 508 F.Supp. 544 (D.S.C.1981); Custodio v. Bauer, 251 Cal.App.2d 303, 59 Cal.Rptr. 463 (1967); Coleman v. Garrison, 349 A.2d 8 (Del.1975); Wilczynski v. Goodman, 73 Ill. App.3d 51, 29 Ill.Dec. 216, 391 N.E.2d 479 (1979); Troppi v. Scarf, 31 Mich.App. 240, 187 N.W.2d 511 (1971); Sherlock v. Stillwater Clinic, 260 N.W.2d 169 (Minn.1977); Betancourt v. Gaylor, 136 N.J.Super. 69, 344 A.2d 336 (1965); Speck v. Finegold, 268 Pa.Super. 342, 408 A.2d 496 (1979); Terrell v. Garcia, 496 S.W.2d 124 (Tex.Civ.App. 1973), cert. denied, 415 U.S. 927, 94 S.Ct. 1434, 39 L.Ed.2d 484 (1974); Rieck v. Medical Protective Co., 64 Wis.2d 514, 219 N.W.2d 242 (1974).
In Alabama, in order to state a cause of action for negligence, the plaintiff must show that the defendant has a legal duty, that the defendant has breached that duty, that the defendant's breach proximately caused an injury, and that damages have resulted to the plaintiff. Quillen v. Quillen, 388 So.2d 985 (Ala.1980). It is also the law in Alabama that a physician owes a duty to exercise reasonable care in the treatment of his or her patients. Code 1975, § 6-5-484(a). Therefore, if proven, the negligent misrepresentation of the nature of the surgery and/or such negligent performance of that surgery as would wrongfully cause a patient to become pregnant would be a breach of that duty.
Since the trial court granted the defendant's motion for summary judgment, we must initially state that the party moving for summary judgment must be entitled to a judgment as a matter of law, Fountain v. Phillips, 404 So.2d 614 (Ala.1981); Butler v. Michigan Mutual Insurance Co., 402 So.2d 949 (Ala.1981), with all reasonable inferences concerning issues of material fact to be drawn in favor of the non-moving party. Papastefan v. B & L Construction Co., 356 So.2d 158 (Ala.1978). Assuming, without deciding, that the first three elements for a cause of action for negligence are met, the issue becomes whether the trial court erred in holding that Mrs. Boone could not recover more than the $1,500.00 in medical expenses paid to her by the hospital. We hold that the trial court erred in granting Dr. Mullendore's motion for summary judgment on the issue of damages.
*721 Among the difficult issues in an action of this type is the measure of damages to be ascertained. Several theories have been proposed by other courts and by the parties to this action. Dr. Mullendore urges this Court to find that, as a matter of law, the benefits accruing to the parents of a healthy child outweigh the economic and emotional detriment of having an unwanted, unanticipated child. See, e.g., Terrell v. Garcia, 496 S.W.2d 124 (Tex.Civ.App.1973), cert. denied, 415 U.S. 927, 94 S.Ct. 1434, 39 L.Ed.2d 484 (1974); Rieck v. Medical Protective Co., 64 Wis.2d 514, 219 N.W.2d 242 (1974). Under this theory the holding of the trial court would have to be affirmed.
In California, it has been held that all costs and expenses of rearing such a child, and also emotional distress, are recoverable. Custodio v. Bauer, 251 Cal.App.2d 303, 59 Cal.Rptr. 463 (1967). A third view of damages is that the parents may recover only damages for pregnancy-related costs and expenses, and damages for pain and suffering. Wilbur v. Kerr, Ark., 628 S.W.2d 568 (1982); Coleman v. Garrison, 349 A.2d 8 (Del.1975).
The fourth view of damages, which is urged by the appellant, is known as the "benefit" rule of damages. Under the "benefit" rule, parents may recover for damages proximately caused by the physician's negligence, including pregnancy-related expenses and the economic damages to the family resulting from the birth and rearing of the additional child. These damages may be offset, however, by the benefits accruing to the family as a result of the child's birth. Sherlock v. Stillwater Clinic, 260 N.W.2d 169 (Minn.1977). See also, Restatement (Second) of Torts, § 920 (1977). Mrs. Boone contends that the losses and benefits resulting from a wrongful pregnancy are relatively tangible and are measurable factors for the jury to consider separately. We cannot agree.
Today, we adopt as the measure of damages in an action of this type essentially the standard set out in Coleman v. Garrison, 327 A.2d 757 (Del.Super.Ct.1974), aff'd, 349 A.2d 8 (Del.1975). This Court believes that damages should be limited to the actual expenses and the injury attending the unexpected pregnancy. Thus, the damages recoverable would include: (1) The physical pain and suffering, and mental anguish of the mother as a result of her pregnancy; (2) the loss to the husband of the comfort, companionship, services, and consortium of the wife during her pregnancy and immediately after the birth; and (3) the medical expenses incurred by the parents as a result of the pregnancy. Any additional damages would tend to be extremely speculative in nature, and awarding such damages could have a significant impact on the stability of the family unit and the subject child.
As indicated, numerous courts have addressed these issues in recent years and have come to various conclusions. A large number, however, have held that for public policy and other reasons the expenses of rearing a child to the age of majority should be denied. Wilbur v. Kerr, Ark., 628 S.W.2d 568 (1982); Coleman v. Garrison, 327 A.2d 757 (Del.Super.Ct.1974), aff'd, 349 A.2d 8 (Del.1975); Wilczynski v. Goodman, 73 Ill.App.3d 51, 29 Ill.Dec. 216, 391 N.E.2d 479 (1979); Stewart v. Long Island College Hospital, 35 A.D.2d 531, 313 N.Y.S.2d 502 (1970), aff'd, 30 N.Y.2d 695, 283 N.E.2d 616, 332 N.Y.S.2d 640 (1972); Hays v. Hall, 477 S.W.2d 402 (Tex.Civ.App.1972); Rieck v. Medical Protective Co., 64 Wis.2d 514, 219 N.W.2d 242 (1974). The cornerstone of this denial is the idea that a normal healthy life should not be the basis for a compensable wrong. "The existence of a normal, healthy life is an esteemed right under our laws, rather than a compensable wrong." Wilczynski v. Goodman, 29 Ill.Dec. at 224, 391 N.E.2d at 487. As one court has stated:
"To permit the parents to keep their child and shift the entire cost of its upbringing to a physician who failed to determine or inform them of the fact of pregnancy would be to create a new category of surrogate parent. Every child's smile, every bond of love and affection, every reason for parental pride in a child's achievements, every contribution by the child to the welfare and well-being *722 of the family and parents, is to remain with the mother and father. For the most part, these are intangible benefits, but they are nonetheless real.... We hold that such result would be wholly out of proportion to the culpability involved, and that the allowance of recovery would place too unreasonable a burden upon physicians, under the facts and circumstances here alleged."
Rieck v. Medical Protective Co., 219 N.W.2d at 244-45.
The birth of a healthy child, and the joy and pride in rearing that child, are benefits on which no price tag can be placed. This joy far outweighs any economic loss that might be suffered by the parents. Wilbur v. Kerr, Ark., 628 S.W.2d 568 (1982).
"A child is bornhow can it be said within the ambit of legal predictability that the monetary cost of that life is worth more than its value? We recognize that a few courts, approaching the problem in clinical terms, have applied a `balancing test' which, presumably, permits a jury to say that a life has been weighed and found wanting and thus the parents have been `damaged'. See 27 A.L.R.3d Annot.: 906 and the discussion of the cases in Terrell v. Garcia, Tex.Civ.App., 496 S.W.2d 124 (1973). We respect the efforts of other Courts to provide a remedy under the circumstances but it seems to us that that kind of judgment, if appropriate at all in an American Court of law, might be applied at the end of a life, after it has been lived and when the facts can be identified. But, in our view, any attempt to apply it at birth can only be an exercise in prophecy, an undertaking not within the speciality of our fact-finders."
Coleman v. Garrison, 349 A.2d 8 (Del.1975). In Terrell v. Garcia, 496 S.W.2d 124 (Tex. Civ.App.1973), cert. denied, 415 U.S. 927, 94 S.Ct. 1434, 39 L.Ed.2d 484 (1974), the Texas Court of Civil Appeals succinctly spelled out the inherent problems of the "benefits rule" advocated by the plaintiff. That court stated:
"Irrespective of the public policy view, adoption of the `benefits rule' as suggested by Troppi, would present unsurmountable problems of proof under our present standards for proof of damages. Proof could undoubtedly be offered regarding the cost of care and maintenance for a hypothetical child, although the standard of living and extent of education to be provided such child would undoubtedly require considerable conjecture and speculation by the trier of facts.
. . . .
"... Nevertheless, as recognized in Hays and Troppi, the satisfaction, joy and companionship which normal parents have in rearing a child make such economic loss worthwhile. These intangible benefits, while impossible to value in dollars and cents are undoubtedly the things that make life worthwhile. Who can place a price tag on a child's smile or the parental pride in a child's achievement? Even if we consider only the economic point of view, a child is some security for the parents' old age. Rather than attempt to value these intangible benefits, our courts have simply determined that public sentiment recognizes that these benefits to the parents outweigh their economic loss in rearing and educating a healthy, normal child."
496 S.W.2d at 127-28. To allow damages under the "benefit rule" as urged by Mrs. Boone, would only invite speculative and ethically questionable assessments of damages that in the long run would cause a great emotional impact on the child, its siblings, and the parents.
Another problem is the possible harm that can be caused to the unwanted child who will one day learn that he not only was not wanted by his or her parents, but was reared by funds supplied by another person. Some authors have referred to such a child as an "emotional bastard" in a realistic, but harsh, attempt to describe the stigma that will attach to him once he learns the true circumstances of his upbringing. 50 Cin.L. Rev. 65 (1981); Wilbur v. Kerr, Ark., 628 S.W.2d 568 (1982). Mrs. Boone, however, contends that such damages are not for the *723 child, but are, as stated by the Illinois Court of Appeals in Doerr v. Villate, 74 Ill.App.2d 332, 220 N.E.2d 767 (Ill.Ct.App.1966), "to replenish the family exchequer so that a new arrival will not deprive other members of the family of what was planned as their just share of family income." We cannot agree. If the "benefit rule" is adopted, it will place the parent in the win-lose situation that if they admit that the child is a welcome addition and that they will love the child and rear it properly, they may get no damages at all. It would thus be to their advantage, at least monetarily so, to deny any affection for the child and to emphasize all of the economic problems the child will cause, thus increasing damages and the possibility of emotional trauma in the child at the time he or she learns of the earlier court proceedings.
This dilemma leads to several more problems in the assessment of damages. First, in Alabama one seeking to hold another liable for damages is required to use reasonable efforts to avoid or mitigate his or her damages. Bates v. General Steel Tank Co., 36 Ala.App. 261, 55 So.2d 213, cert. dismissed, 256 Ala. 466, 55 So.2d 218 (1951). Yet courts recognizing this cause of action have rejected the argument that parents should choose among the various methods of mitigationadoption, abortion, etc.seeing the moral issues begin to make inroads into an already emotional and speculative process of determining damages. The issue is one "which meddles with the concept of life and the stability of the family unit." Wilbur v. Kerr, 628 S.W.2d at 571.
Another problem arises in regard to the damages that may be awardednamely, what to do with the money recovered. If damages are awarded for the care and maintenance of the child, should the money go directly to the family to use as the parents see fit, should the money be placed in a special trust fund for the child, or should a guardian ad litem be appointed for the benefit of the child to insure that the money recovered actually goes to the rearing of the child?
As stated by the Supreme Court of Arkansas in Wilbur v. Kerr:
"It is a question which meddles with the concept of life and the stability of the family unit. Litigation cannot answer every question; every question cannot be answered in terms of dollars and cents. We are also convinced that the damage to the child will be significant; that being an unwanted or `emotional bastard,' who will some day learn that its parents did not want it and, in fact, went to court to force someone else to pay for its raising, will be harmful to that child. It will undermine society's need for a strong and healthy family relationship. We have not become so sophisticated a society to dismiss that emotional trauma as nonsense."
628 S.W.2d at 571.
We must emphasize that our holding is in the restricted context of a healthy, though unplanned and unexpected, child. Nothing in this opinion should be construed as addressing, or commenting upon, the measure of damages attendant with a right of action, if any, in favor of the parents of a child, in an action of this type, when the child is born and afflicted with predetermined or readily foreseeable genetic or hereditary defects.
In conclusion, this Court holds that there is no viable reason for exempting a physician from liability when his negligence proximately and wrongfully causes a patient to become pregnant. Because the issues of negligence and proximate cause are generally questions of fact for the jury, and because we hold that the trial court erred in limiting the amount of damages recoverable to the out of pocket expenses of delivering, the holding of the trial court is reversed and the cause remanded. If, at trial, liability is established, the damages recoverable by the plaintiffs include: (1) compensation for the physical pain and suffering, and mental anguish of the mother as a result of the pregnancy; (2) the loss to the husband of the comfort, companionship, services, and consortium of the wife during her pregnancy and immediately after the birth; and (3) the medical expenses incurred as a result of the pregnancy.
REVERSED AND REMANDED.
*724 MADDOX, ALMON, SHORES, EMBRY, BEATTY and ADAMS, JJ., concur.
FAULKNER, JONES and SHORES, JJ., concur specially.
Though Justices SHORES and BEATTY did not sit during oral argument, tapes of oral argument and the briefs of the parties have been made available and have been studied carefully by them.
FAULKNER, Justice (concurring specially).
My difference with the majority is simply that I would hold that damages here should be assessed under the "benefit" rule.
The issue presented in the present appeal is whether this Court will recognize an action for "wrongful pregnancy" and award full and complete damages. The action for wrongful pregnancy is "generally brought by the parents of a healthy, but unwanted, child[,] against a pharmacist or pharmaceutical manufacturer for negligently filling a contraceptive prescription, or against a physician for negligently performing a sterilization procedure or abortion." Phillips v. United States, 508 F.Supp. 544, 545 n. 1 (D.S.C.1981). See Robertson, Civil Liability Arising from "Wrongful Birth" Following an Unsuccessful Sterilization Operation, 4 Am. J.L. Comment, Pregnancy After Sterilization: Causes of Action for Parent and Child, 12 J. Fam. L. 635 (1972). The majority of jurisdictions addressing the wrongful pregnancy issue have recognized that parents are entitled to bring such a claim. Phillips v. United States, 508 F.Supp. at 549. Today, this Court refuses to follow the majority rule, and fails to permit a doctor to be held fully responsible for his or her negligence. I would follow the majority rule, and permit the parents in the present case to recover complete damages for wrongful pregnancy.
The majority opinion raises two major arguments against granting full damages for wrongful pregnancy. First, the majority asserts that damages for wrongful pregnancy are unascertainable. Second, a more emotionally charged argument is asserted that public policy recognizes the value of human life and this value precludes any action for wrongful pregnancy.
The resolution of the question of a physician's liability for wrongful pregnancy, however, does not require "intrusion into the domain of moral philosophy." Troppi v. Scarf, 31 Mich.App. 240, 187 N.W.2d 511, 513 (1971). Public policy arguments in such cases often serve as a smokescreen hiding the true issue. The ultimate issue is whether a physician is liable for negligently failing to perform an operation or for negligently misrepresenting the nature of an operation.
Dr. Mullendore asserts that recovery for wrongful pregnancy is against public policy. The thrust of this argument is that the "sanctity of life precludes a cognizable action in law." Speck v. Finegold, 268 Pa.Super. at 354, 408 A.2d at 503 (1979). It is urged that life, as a matter of law, cannot be damaging to either a child or a parent. Many of the early cases, implicitly accepted by the majority opinion, relied on public sentiment against abortion and sterilization and the sentiment in favor of procreation. See Glietman v. Cosgrove, 49 N.J. 22, 227 A.2d 687 (1967). "The great end of matrimony is not the comfort and convenience of the immediate parties, ... but the procreation of progeny." Shaheen v. Knight, 6 Lyc. 19, 23, 11 Pa.D. & C.2d 41, 45 (1957).
The majority asserts that "a normal healthy life should not be the basis of a compensable wrong." I agree. Nevertheless, the purpose of an action for wrongful pregnancy is not to recover for the life of the child, but the "diminution in the family wealth that necessarily resulted in a hardship to the other family members." Sherlock v. Stillwater Clinic, 260 N.W.2d 169 (Minn.1977).
The majority also contends that a child whose parents recover damages for wrongful pregnancy will be an "emotional bastard." First it should be noted that the majority permits some, but not all, damages suffered for wrongful pregnancy. Will a child feel any less an "emotional bastard" if its parents recover the damages permitted *725 by the majority rather than full and complete damages? Furthermore, it is difficult to believe that a child will feel like an "emotional bastard" in either case. How many members of society who were born when birth control was unacceptable, learned that their births were unexpected and sensed their births had undesired effects on the family treasury? If this Court were to grant the full measure of damages for "wrongful pregnancy" the economic pressures of raising an unexpected child would be taken off the parents, permitting them to concentrate on giving the child the love and care he or she needs.
Furthermore, the Supreme Court of the United States recognized that the right to privacy protects a husband and wife from unwarranted intrusions into the fundamental decisions of a family concerning contraception and abortion, in Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973); Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). In light of such Supreme Court decisions, it cannot be maintained that family planning and contraception are against public policy.
"To say that for reasons of public policy, contraceptive failure can result in no damage as a matter of law ignores the fact that tens of millions of persons use contraceptives daily to avoid the very result which the defendant would have us say is always a benefit, never a detriment."
Troppi v. Scarf, 31 Mich.App. at 253, 187 N.W.2d at 517.
The majority asserts that recognizing full damages for wrongful pregnancy "meddles with the concept of life and the stability of the family unit." I believe that the failure of this Court to recognize this cause of action intrudes on the constitutionally protected right of the Boones to determine the size of their family. The Court in Speck v. Finegold, paraphrasing Custodio v. Bauer, 251 Cal.App.2d 303, 59 Cal.Rptr. 463 (1967), noted: "the birth of an [unanticipated] child may be less than a blessing in an economically deprived family, particularly if the sterilization had been intended to prevent the birth of a physically defective or mentally retarded infant." 268 Pa.Super. at 360, 408 A.2d at 506.
Certain public policies favor granting complete damages for wrongful pregnancy. Society has an interest in seeing that operations are properly performed and that patients are properly advised. The recognition of a cause of action encourages physicians to accurately perform these tasks by penalizing those physicians who fail to observe customary standards of medical practice. See Phillips v. United States, 508 F.Supp. at 551.
Perhaps the most difficult issue in wrongful pregnancy actions is the ascertainment of damages. Several theories of damages have been proposed by other courts. The doctor asks this Court to find, that as a matter of law, the benefits accruing to the parents of a healthy child outweigh the economic and emotional detriment of having an unwanted, unanticipated child. See Terrell v. Garcia, 496 S.W.2d 124 (Tex.Civ. App.1973), cert. denied, 415 U.S. 927, 94 S.Ct. 1434, 39 L.Ed.2d 484 (1974); Rieck v. Medical Protective Co., 64 Wis.2d 514, 219 N.W.2d 242 (1974). Other jurisdictions take the approach that all costs and expenses of raising such a child, including emotional distress and the actual cost of having an infant, are recoverable. See, e.g., Custodio v. Bauer, 251 Cal.App.2d 303, 59 Cal.Rptr. 463 (1967). A third view of damages, taken by the majority of this Court, is that the parents may recover only damages for pregnancy-related costs and expenses, and damages for pain and suffering. Coleman v. Garrison, 327 A.2d 757 (Del.Super.Ct.), aff'd, 349 A.2d 8 (Del.1974). Finally, the fourth view of damages, which I would adopt, is the so called "benefit" rule of damages.
Under the "benefit" rule, parents may recover for damages proximately caused by the physician's negligence, including pregnancy-related expenses and the economic damages to the family of the birth and rearing of an additional child. These damages *726 may be offset, however, by the benefits accruing to the family on the birth of the child. Section 920 of the Restatement (Second) of Torts (1979), states:
"Where the defendant's tortious conduct has caused harm to the plaintiff or to his property and in so doing has conferred upon the plaintiff a special benefit to the interest which was harmed, the value of the benefit conferred is considered in mitigation of damages, where this is equitable. [Emphasis added.]"
This rule permits the factfinder flexibility in determining the extent of benefits accruing to the parents in different circumstances. As the court in Troppi v. Scarf, 31 Mich.App. at 256-57, 187 N.W.2d at 518-19, points out, the trier of fact must have the power to evaluate the benefit according to all the facts and circumstances in a particular case. "Family size, family income, age of the parents, and marital status are some, but not all of the factors" which the trier of fact may consider in awarding damages. Id.
"Consider, for example, the case of the unwed college student who becomes pregnant due to a pharmacist's failure to properly fill her prescription for oral contraceptives. Is it not likely that she has suffered far greater damage than the young newlywed who, although her pregnancy arose from the same sort of negligence, had planned the use of contraceptives only temporarily, say, while she and her husband took an extended honeymoon trip? Without the benefits rule, both plaintiffs would be entitled to recover substantially the same damages.
"Application of the benefits rule permits a trier of fact to find that the birth of a child has materially benefited the newly wed couple, notwithstanding the inconvenience of an interrupted honeymoon, and to reduce the net damage award accordingly. Presumably a trier of fact would find that the `family interests' of the unmarried coed has [sic] been enhanced very little."
The major difficulty in applying the "benefit" rule is that comment 6 to Section 920 of the Restatement indicates that benefits to one type of interest may not offset damages to another type of interest. Nevertheless, the benefit rule is rooted in the equitable principle of unjust enrichment. See Sherlock v. Stillwater Clinic, 260 N.W.2d at 176. In a cause of action for "wrongful pregnancy," it would be unfair and would result in unjust enrichment to strictly apply the "same interest" limitation. Since the economic burden and emotional distress of rearing an unexpected child are inextricably related to each other, I would hold that the reasonable costs of rearing a child may be offset by the value of the economic and emotional benefits conferred on the parents by a child. See Troppi v. Scarf, 31 Mich.App. at 258, 187 N.W.2d at 518. Accord, Sherlock v. Stillwater Clinic, 260 N.W.2d at 176. In the case of a normal, healthy child, these expenses usually do not extend beyond the age of majority when the parents are no longer under an obligation of support. Id. These damages may be offset by the value of the child's aid, comfort and society. Id.
The majority also asserts that such a measure of damages is unascertainable and entirely speculative. Nonetheless, the pregnancy-related expenses, medical and hospital bills, lost wages and so forth are readily ascertainable. Likewise, the cost of rearing of a child is an expense routinely computed by juries. Mrs. Boone's damages for pain and suffering are ascertainable, as this court recently recognized in Taylor v. Baptist Medical Center, 400 So.2d 369 (Ala. 1981). The only uncertainty arises from the application of the "benefits" rule. While the exact dollar value of the benefits accruing to the parents is difficult to determine, it is enough that the plaintiff shows the extent of damages as a matter of reasonable and justifiable inference. Story Parchment Co. v. Paterson Parchment Co., 282 U.S. 555, 51 S.Ct. 248, 75 L.Ed. 544 (1931); American Life Insurance Co. v. Shell, 265 Ala. 306, 90 So.2d 719 (1956). The rule in Alabama is that when damages are not capable of being precisely measured, the amount of damages to be granted rests largely within the discretion of the jury. *727 Summerlin v. Robinson, 42 Ala.App. 116, 154 So.2d 685 (1963). The most fundamental principle of tort law is that a party should recover for injuries caused by the wrongdoing of others. A party who is wronged should have an opportunity to present to the jury the question of what are reasonable and proper damages. This Court and courts of other jurisdictions have permitted the question of damages to be submitted to a jury in analogous situations. See, e.g., Smith v. Richardson, 277 Ala. 389, 171 So.2d 96 (1965) (recovery of parents for permanently injured child); Sellnow v. Fahey, 305 Minn. 375, 233 N.W.2d 563 (1975) (recovery for wrongful death). Juries have been able to comprehend and determine the amount of damages in similar situations, and are capable of determining fair and reasonable damages in an action for wrongful pregnancy.
An action for wrongful pregnancy, in which damages are measurable, may be distinguished from an action for "wrongful life," in which damages are said to be incalculable. It should be recalled that in an action for wrongful life, an action is brought on behalf of a child for negligently permitting the child to be born. See Elliott v. Brown, 361 So.2d 546 (Ala.1978). Several courts have denied actions for wrongful life, based on the rationale that we cannot measure "the value of life with impairments against the nonexistence of life itself." Id. at 547 (quoting Gleitman v. Cosgrove, 49 N.J. 22, 227 A.2d 687 (1967)); Dumer v. St. Michael's Hospital, 69 Wis.2d 766, 233 N.W.2d 372 (1975). Justice Almon, speaking for this Court, has noted that there is no legal right not to be born. Elliott v. Brown, 361 So.2d at 548. Nevertheless, several courts which have refused to recognize an action for wrongful life have recognized an action for wrongful pregnancy. See Phillips v. United States, 508 F.Supp. 544 (D.S.C.1981); Phillips v. United States, 508 F.Supp. 537 (D.S.C.1980); Sherlock v. Stillwater Clinic, 260 N.W.2d 169 (Minn.1977); Berman v. Allan, 80 N.J. 421, 404 A.2d 8 (N.J.1979); Speck v. Finegold, 268 Pa.Super. 342, 408 A.2d 496 (1979). These cases distinguish wrongful life actions in two ways. First, the courts state that whether it is better to be born with defects, or not at all, is beyond our current ability to understand or calculate. Second, and more important, is that a cause of action is not cognizable at law for the right not to be born. These courts have permitted recovery for wrongful pregnancy. A parent has the right not to have a child. Thus, a legal right has been damaged. Furthermore, damages for rearing a child are similar to damages already committed to the power and domain of the jury.
The appellee also contends that Mrs. Boone may not recover for wrongful pregnancy because she failed to mitigate damages by aborting the child or giving it up for adoption. The Michigan appellate court addressed this question in Troppi v. Scarf, 31 Mich.App. 240, 187 N.W.2d 511 (1971). The court eloquently stated this conclusion:
"However, to impose such a duty upon the injured plaintiff is to ignore the very real difference which our law recognizes between the avoidance of conception and the disposition of the human organism after conception.... At the moment of conception, an entirely different set of legal obligations is imposed upon the parents. A living child almost universally gives rise to emotional and spiritual bonds which few parents can bring themselves to break.
"Once a child is born he obviously should be treated with love regardless of whether he was wanted when he was conceived. Many, perhaps most, persons living today are conceptional accidents in the sense that their parents did not desire that a child result from the particular intercourse in which the person was conceived. Nevertheless, when the child is born, most parents accept him with love. That the plaintiffs accepted their eighth child does not change the fact that the birth of another child, seven years younger than the youngest of their previously born children, unbalanced their life style and was not desired by them."
*728 JONES and SHORES, Justices (Concurring specially).
We are in complete agreement with the majority opinion, both as to the issue of liability and as to the measure of damages recoverable in such cases. We concur specially in order to amplify the rationale for rejection of the "benefit" rule and to clarify the mental anguish element set forth in the opinion as a portion of item 1 of the recoverable elements of damages.
While we agree that Plaintiff has suffered damages beyond the medical expenses incurred in the prenatal care and birth of her child, we further agree that legal damages may not be extended to cover the economic burden of rearing the child to the age of majority.
To adopt such a measure of damages would reduce the value of the parent/child relationship to a mathematical formula, subject to being diminished only by incalculable future events. But, more than this, it would equate the right of the mother to elect, in the first instance, not to conceive with a presupposed subsequent attitude of "not wanting" the child born of her "wrongful pregnancy." A woman's personal right to exercise the option not to become pregnant does not necessarily mean that a child conceived as a result of the breach of that initial right is an "unwanted" child. To the contrary, it is more accurately an "unexpected" or "unanticipated" child.[1]
Indeed, it is the difference between these two concepts that constitutes the premise upon which the law must formulate its measure of damages. Inherent in the mother's decision to carry the child to full terma right not inconsistent with her initial decision not to conceiveis her decision to rear the child. Because the decision to bear the child is not economically motivated, the damages for rearing the child cannot be economically measured.
Instead, the law must relate her damages to the reality of her injury. If Mrs. Boone did, in fact, conceive a child as a result of Dr. Mullendore's negligence, as alleged, a legal right has been violated and she has suffered an injury, in that she relied on the doctor's representations that she was sterile and, in doing so, did not exercise her right to elect some other form of contraception. However, the law should not assume, nor does public policy permit the assumption, that her injury consists in giving birth to an "unwanted" child. For the tort of negligently interfering with her right not to become pregnant she is entitled to compensation, but only to the extent of her resultant injuries, one element of which is the mental anguish which flows directly from the loss of such right. The normal causation/resultant injury rationale of tort law, however, is not applicable to this situation. To effect a legal rule that fosters the "unwanted child" concept by permitting an award of damages based upon the costs of the child's maintenance and support would impede, rather than enhance, the natural familial relationship.
On the other hand, the law should recognize that an alleged wrong, if legally established, results in denial of Plaintiff's lawful right to exercise the option not to become pregnant. The wrong is directly and exclusively related to her personal right not to become pregnant. In reliance on the Defendant doctor's representation, she says, she proceeded on the assumption that her choice not to become pregnant had been assured, and thus did not exercise other methods of contraception.
Consequently, assuming liability as alleged, Mrs. Boone is entitled to recover, if proved, those elements of damages enumerated in the Court's opinion, including any mental anguish suffered by her for the violation of her personal right not to conceive a child.
NOTES
[1] While we differ materially with the measure of damages formulated therein, see Troppi v. Scarf, 31 Mich.App. 240, 187 N.W.2d 511 (1971), for an excellent discussion of the distinction, which the law recognizes, between avoidance of conception and the disposition of the human organism after conception.