L.K.D.H., as next friend of her minor daughter, J.L.D., appeals from a summary judgment entered against her in that capacity and in favor of Planned Parenthood of Alabama, Inc. L.K.D.H. also appeals from a separate summary judgment entered against her individually, and in favor of Planned Parenthood.
In January 2002, L.K.D.H., individually and as next friend of J.L.D., filed a complaint in the Jefferson Circuit Court alleging claims of negligence and willful or wanton conduct against Planned Parenthood. The claims arose out an abortion procedure performed on L.K.D.H. in June 1999 when she was pregnant with J.L.D. The procedure allegedly injured both L.K.D.H. and J.L.D. According to answers to interrogatories, J.L.D. was born with "a hole in her heart" and an "inverted tube that led from her lungs to her heart causing her body not to be able to receive enough oxygen."
As to the claims asserted on behalf of J.L.D., L.K.D.H. alleged that Planned Parenthood "was operating or causing to be operated a medical treatment facility in Jefferson County, Alabama, [and that it] provided medical treatment to [L.K.D.H.] which injured and otherwise caused permanent damages and injuries to [J.L.D.]" The complaint continued:
 "As a proximate consequence of the negligence of the Defendant, . . . [J.L.D.] was injured and suffered other damages, including pain and suffering, mental anguish and emotional distress, physical injuries, and was caused to incur medical bills, legal expenses, payment of various expenses . . ., and suffered other injuries, some of which are permanent."
In addition to the claims asserted on behalf of J.L.D., L.K.D.H. also alleged that as a result of Planned Parenthood's wrongful conduct she had personally suffered various injuries and damages, including "permanent" injury, "pain and suffering, loss of income, . . . mental anguish and emotional distress," medical expenses, and legal expenses. L.K.D.H., individually and on behalf of J.L.D., requested a judgment against Planned Parenthood for $1,000,000 in compensatory damages and for punitive damages. *Page 155 
After a failed mediation, the circuit court entered an order in July 2004 setting the case for a trial to be held in February 2005. The order also required L.K.D.H. to identify her expert witnesses, including a summary of each expert witness's opinion, on or before September 10, 2004, and it required each party to provide, 14 days before trial, a list of witnesses that that party intended to call at trial.
Also in July 2004, Planned Parenthood filed a motion for a summary judgment as to the claims asserted on behalf of J.L.D. In its motion, Planned Parenthood challenged only whether L.K.D.H., on behalf of J.L.D., had stated a cognizable claim for relief against Planned Parenthood. Relying solely onElliott v. Brown, 361 So.2d 546 (Ala. 1978), a case involving a failed vasectomy, Planned Parenthood argued that the claims asserted on behalf of J.L.D. were simply claims alleging "wrongful life" (i.e., claims alleging that but for Planned Parenthood's wrongful conduct J.L.D. would not have been born) and that "under Alabama law, a child can[not] pursue a malpractice claim against a medical provider arising out of a failed abortion procedure." Planned Parenthood specifically did "not contest the [factual] allegations asserted [on behalf of J.L.D.]," but it stated that it reserved the right to contest such matters should its motion for a summary judgment be denied. It also noted that "there are clear issues pertaining to duty, standard of care, causation and damages that substantially undermine [the] claims [asserted on behalf of J.L.D.] which are reserved for a later time, if necessary." Thus, the only issue before the circuit court on the motion for a summary judgment as to the claims asserted on behalf of J.L.D. was whether Alabama law allows for a cause of action on behalf of a child against an abortion provider based on negligent acts that cause the child to be born in an injured or deformed condition. L.K.D.H. did not file a response to Planned Parenthood's summary-judgment motion as to the claims asserted on behalf of J.L.D.
In August 2004, the circuit court entered an order granting Planned Parenthood's motion for a summary judgment as to the claims asserted on behalf of J.L.D. Specifically, the circuit court concluded that the facts as alleged by L.K.D.H., on behalf of J.L.D., were undisputed for purposes of Planned Parenthood's motion and that, "in view of Elliott," Planned Parenthood was entitled to a judgment as a matter of law.
In December 2004, Planned Parenthood filed a motion for a summary judgment as to L.K.D.H.'s individual claims. In support of its motion, Planned Parenthood filed an affidavit from Dr. Richard 0. Davis, a practicing physician who is licensed in the State of Alabama and who is "experienced in obstetrics and gynecology, maternal and fetal medicine and is the Medical Director of Planned Parenthood of Alabama, Inc." Dr. Davis's affidavit states, in pertinent part:
 "5. In particular, the medical records reflect that an abortion procedure was performed on [L.K.D.H.] at Planned Parenthood of Alabama, Inc. on June 5, 1999 to terminate a pregnancy of approximately 7.4 gestation weeks, which was confirmed by ultrasound. Dr. Elizabeth Kemp performed the evacuation procedure on June 5, 1999 using a suction curettage which is an appropriate procedure based upon [L.K.D.H.'s] history and condition. Dr. Kemp properly confirmed the evacuation and identified the products of conception. Furthermore, the products of conception were submitted for a pathology examination which confirmed the removal of products of conception. . . . Accordingly, the medical records and pathology report confirm *Page 156 
the procedure was properly performed.
 "6. Nonetheless, particularly during an early gestation period, such as in the case here, it is not uncommon for there to be a continuing pregnancy notwithstanding the exercise of reasonable care, skill and diligence as other similarly situated health care providers in the same general line of practice. In my opinion, the care and treatment rendered to [L.K.D.H.] met or exceeded the required standard of care.
 "7. Likewise, I am familiar with the follow-up care and treatment provided to patients undergoing pregnancy termination procedures by medical providers, such as [Planned Parenthood] and, in my opinion, the care and treatment provided [L.K.D.H.] by [Planned Parenthood], at all times, met or exceeded the required level of such reasonable care, skill and diligence as other similarly situated health care providers in the same general line of practice, ordinarily have and exercise in like cases."
Planned Parenthood noted that L.K.D.H. had not designated any expert witnesses to testify at trial in support of her claims, as she was required to do by the July 2004 order. Planned Parenthood asserted that because it had presented substantial evidence as to the applicable standard of care through Dr. Davis's affidavit, L.K.D.H. had the burden of presenting substantial evidence, through expert testimony, that Planned Parenthood had breached the applicable standard of care. Planned Parenthood further argued that because "[L.K.D.H.] has not procured any expert testimony to establish her case and cannot refute the expert testimony of Dr. Davis," she could not "prove a breach of the standard of care as required by Alabama Code [1975], § 6-5-548." See § 6-5-548(a) ("[T]he plaintiff shall have the burden of proving by substantial evidence that the health care provider failed to exercise such reasonable care, skill, and diligence as other similarly situated health care providers in the same general line of practice ordinarily have and exercise in a like case."). Therefore, Planned Parenthood requested that the circuit court enter a summary judgment in favor of Planned Parenthood as to L.K.D.H.'s individual claims.
Upon motion by L.K.D.H., the circuit court entered an order giving her until January 3, 2005, to respond to Planned Parenthood's motion. On December 28, 2004, L.K.D.H. filed a response to Planned Parenthood's motion for a summary judgment as to her individual claims, along with a supporting affidavit signed by her and a supporting affidavit from Dr. James A. Mankin, Jr., a physician licensed to practice medicine in the State of Alabama.
On January 4, 2005, Planned Parenthood filed a motion to strike Dr. Mankin's affidavit on the ground that L.K.D.H. had failed to comply with the circuit court's July 2004 scheduling order. L.K.D.H. filed a response to Planned Parenthood's motion to strike, asserting that the "affidavits submitted in opposition to the pending motion for summary judgment are required by law, impose no hardship on [Planned Parenthood], and simply confirm the pending claims of [L.K.D.H.]."
After L.K.D.H. filed her response, the circuit court entered an order stating that L.K.D.H. did not "refute" Planned Parenthood's argument that L.K.D.H. had failed to disclose Dr. Mankin as an expert witness as required by the July 2004 scheduling order. The circuit court concluded, "[t]rial is now less than a month away, and to permit a surprise expert witness to testify at this late date would unduly prejudice [Planned Parenthood]." The circuit court granted Planned Parenthood's motion *Page 157 
to strike Dr. Mankin's affidavit, citing Coca-Cola BottlingCo. United, Inc. v. Stripling, 622 So.2d 882, 889
(Ala. 1993) (holding that a trial court did not err when it refused to allow an expert to testify because the expert "had not been revealed before trial, as required by the pretrial order and by Rule 26(b)(4)(A), Ala. R. Civ. P."). The circuit court then stated:
 "With the elimination of this expert testimony, [L.K.D.H.] has no competent evidence to refute the evidence presented by [Planned Parenthood] that it met or exceeded the applicable standard of care. Under Ala. Code [1975], § 6-5-548, the plaintiff must respond to the defendant's pending motion by presenting substantial evidence by a similarly-situated health care provider that the defendant somehow breached the standard of care, resulting in her injury. [L.K.D.H.] has failed to meet this burden."
The circuit court therefore granted Planned Parenthood's motion for a summary judgment as to L.K.D.H.'s individual claims.
L.K.D.H., individually and as next friend of J.L.D., appealed to the Alabama Supreme Court. The Supreme Court transferred the appeal to this court pursuant to Ala. Code 1975, § 12-2-7(6).
As to L.K.D.H.'s claims in her individual capacity, after carefully reviewing the arguments she presented to the circuit court and those she has properly presented on appeal,[1] we cannot conclude that the trial court erred when it entered a summary judgment. L.K.D.H. has argued and cited legal authority for the proposition that an expert witness's testimony is not necessary "` "where want of skill or lack of care is so apparent . . . as to be understood by a layman." `" Ex parteHealth-South Corp., 851 So.2d 33, 38 (Ala. 2002). (quotingTuscaloosa Orthopedic Appliance Co. v. Wyatt,460 So.2d 156, 161 (Ala. 1984), quoting in turn other cases). After carefully considering the evidence and the arguments presented to the circuit court, we cannot conclude that a want of skill or lack of care in the circumstances made the basis of L.K.D.H.'s individual claims would be apparent to a layperson without the benefit of expert testimony.
As to the claims asserted on behalf of J.L.D., L.K.D.H. argues that the circuit court erred as a matter of law when it agreed with Planned Parenthood's characterization of those claims as being claims alleging "wrongful life" and entered a summary judgment on the authority of Elliott. We agree.
There is no presumption of correctness as to the circuit court's entry of a summary judgment, and this court's review thereof is de novo. E.g., Dellocono v. Thomas Hosp.,894 So.2d 694, 695 (Ala.Civ.App. 2004). Rule 56(c)(3), Ala. R. Civ. P., states that a summary judgment "shall be rendered . . . if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the *Page 158 
moving party is entitled to a judgment as a matter of law." Based on the grounds Planned Parenthood asserted in support of its July 2004 summary-judgment motion as to the claims asserted on behalf of J.L.D. and the basis of the circuit court's order granting Planned Parenthood's motion, the only issue for our consideration is whether Planned Parenthood was entitled to a judgment as a matter of law under the pleadings and undisputed evidence presented and under the rationale espoused inElliott. See Hudson-Thompson, Inc. v. Leslie C. KingCo., 361 So.2d 541, 542 (Ala. 1978) ("Even if the facts are undisputed, the motion should not be granted unless the moving party is entitled to judgment as a matter of law."); andMiles v. Foust, 889 So.2d 591, 595 (Ala.Civ.App. 2004) ("A trial court considering an unopposed summary-judgment motion must determine whether that motion and the materials submitted in support of that motion warrant a judgment for the movant as a matter of law.").
Despite the language of the complaint, and despite L.K.D.H.'s answer to Planned Parenthood's interrogatory explaining the "personal injury sustained by [J.L.D.]" that was the basis of the claims asserted on behalf of J.L.D.,[2] Planned Parenthood convinced the circuit court that those claims were claims alleging "wrongful life," as were the plaintiffs claims inElliott. In Elliott, the defendant allegedly negligently performed a vasectomy on Elliott's father, which in turn led to the unwanted birth of Parenthood filed Elliott. Although Elliott suffered from a deformity, that deformity was solely the result of natural causes. Elliott claimed "that the defendant's alleged [preconception] negligence caused her birth; i.e., `wrongful life.'" Elliott, 361 So.2d at 547. Under those circumstances, for the Elliott Court to have allowed an action against the physician would indeed have been to allow an action for the "wrongful life" of the child.
In contrast to Elliott, L.K.D.H., on behalf of J.L.D., did not claim in the circuit court and she has not claimed in her brief to this court that J.L.D. had a right not to be born. Instead, she alleged before the circuit court and argues in her appellate brief that Planned Parenthood negligently performed the abortion procedure (an allegation that Planned Parenthood conceded for purposes of the summary-judgment motion as to the claims asserted on behalf of J.L.D.) and that PlannedParenthood's negligence proximately caused injuries toJ.L.D. Thus, unlike in Elliott, in the present case (based on the facts alleged on behalf of J.L.D.) it was the physician's negligence that caused J.L.D.'s physical injuryor deformity. The claims asserted on behalf of J.L.D. seek to hold Planned Parenthood accountable for causing an injury or deformity, not for the fact that J.L.D. was born. In other words, unlike Elliott, the present case is an action alleging "wrongful injury," not "wrongful life."[3] *Page 159 
The Supreme Court was careful to emphasize that its holding inElliott did not mean that negligence on the part of a physician could not serve as the basis for an action against that physician when the negligence caused deformity to a child. Indeed, the Supreme Court specifically stated inElliott that the child "does not claim that the defendant's alleged preconception negligence caused her deformity," 361 So.2d at 547, and that "[t]his decisionshould not be construed as any precedent whatsoever wherepreconception negligence causes deformity, and where absent thenegligence, normal birth would have probably occurred."Id., 361 So.2d at 548 (emphasis added) (the emphasized language is hereinafter referred to as "the reservation language").
In Elliott, the Supreme Court also cited with approval two cases in which courts approved of a cause of action on behalf of a child for negligence that caused deformities to the child. 361 So.2d at 547. In one of those cases, Renslow v.Mennonite Hospital, 67 Ill.2d 348, 367 N.E.2d 1250, 10 Ill. Dec. 484 (1977), the Illinois Supreme Court stated "that there is a right to be born free from prenatal injuries foreseeably caused by a breach of duty to the child's mother."67 Ill.2d at 357, 367 N.E.2d at 1255, 10 Ill.Dec. at 489. In the other case, Jorgensen v. Meade Johnson Labs., Inc.,483 F.2d 237 (10th Cir.1973), the United States Court of Appeals for the Tenth Circuit concluded that under Oklahoma law the plaintiff had stated a cause of action on behalf of a child when the complaint alleged that the child had suffered "personal injuries including retardation, deformity, [and] pain and suffering" as a result of the mother's preconception use of the defendant's birth-control pill. 483 F.2d at 238. The Tenth Circuit Court of Appeals stated:
 "We are persuaded that the Oklahoma courts would treat the problem of the injuries alleged here as one of causation and proximate cause, to be determined by competent medical proof. Such personal injury cases raise factual issues turning on the medical evidence. . . . And such treatment of the problem would accord with the predominant view that an action may be maintained for prenatal injuries negligently inflicted if the injured child is born alive."
483 F.2d at 240 (footnote omitted).
Renslow and Jorgensen are consistent with the recognition by the Alabama Supreme Court of a cause of action on behalf of a child for wrongful prebirth actions that result in an injury to the child. In 1926, in the context of a case involving prebirth injury to a child, the Alabama Supreme Court concluded that the plaintiff had no cause of action for damages on behalf of the child but that "the mother, of whom the unborn child was a part at the time of the injury, may recover for any damage to it which was not too remote to be recovered at all."Stanford v. St. Louis-San Francisco Ry. Co.,214 Ala. 611, 612, 108 So. 566, 566 (1926). Stanford was subsequently overruled, however, by Huskey v. Smith,289 Ala. 52, 265 So.2d 596 (1972). In Huskey, our Supreme Court explained that "Stanford . . . was based upon the prevailing medical opinion *Page 160 of that day that a fetal child was a part of the mother and was not a `person' until it was born"; that a wrongful-death action based on prenatal injuries to a child who had reached the stage of viability was appropriate; and that "[t]o give further force to Stanford would give protection to an alleged tort-feasor." 289 Ala. at 54, 265 So.2d at 596-97. Similarly, inWolfe v. Isbell, 291 Ala. 327, 280 So.2d 758 (1973) the Alabama Supreme Court held that "the right to maintain an action for the wrongful death of an unborn child depends onthe right of the particular child, if he had survived tomaintain an action for injuries sustained," and that a child's prenatal injuries, even if incurred before the child has reached viability, can support an action for wrongful death when the child is subsequently born alive. 291 Ala. at 330,280 So.2d at 761 (emphasis added). See also Eich v. Town of GulfShores, 293 Ala. 95, 300 So.2d 354 (1974) (recognizing a cause of action for the wrongful death of a still-born child that died as a result of prebirth injuries when the child died after it reached viability).
Despite the apparent distinction between Elliott and the present case, and despite the import of the Supreme Court's reservation language in Elliott as quoted and emphasized above, Planned Parenthood argues that the reservation language in Elliott is inapplicable because if the abortion procedure had been "successful" J.L.D. would not have been born, i.e., "normal birth would probably [not] have occurred." We find Planned Parenthood's position disturbing. According to Dr. Davis's affidavit, when an abortion provider properly performs an abortion procedure, i.e., is not negligent, "particularly during an early gestation period, such as in the case here, it is not uncommon for there to be a continuing pregnancy." (Emphasis added.) In light of the "not uncommon" possibility that a child will survive even a properly performed abortion procedure, it is untenable for Planned Parenthood to argue that it should be able to avoid liability to the child who is thereafter born no matter how deficient the abortion provider's actions or how serious the harm the provider might cause to the child.
As to the specifics of the Elliott opinion, Planned Parenthood's argument in the present case reveals a misunderstanding of the issue presented in Elliott and a failure to appreciate the context in which and the purpose for which the Supreme Court used the reservation language at issue. First, the negligence of the medical provider inElliott did not cause the deformity of the child, only the child's birth. That is why the Supreme Court specifically cautioned that Elliott did not serve to insulate a medical provider from liability when its "negligence causes [the] deformity." 361 So.2d at 548. Second, Elliott
was not an abortion case. There is no indication inElliott that the "absent the negligence, normal birth would have probably occurred" statement was intended to bar a cause of action in the context of an abortion procedure. To the contrary, the clear purpose of this statement by our Supreme Court was to specifically and expressly hold open the possibility that a medical provider might indeed be liable when it causes a child to be born with abnormalities that the child would not have had in the absence of the provider's wrongful conduct.
Finally, we note that when the Supreme Court inElliott concluded that there was no cause of action for "wrongful life," it was concerned with the inherent difficulty of calculating damages when a child claims it would have been better not to have been born than to have been born with deformities. Elliott, 361 So.2d at 547-48. The same difficulty does not exist in the present *Page 161 
case, in which the comparison is between a normal life and a life spent coping with an injury or deformity caused by an abortion provider's alleged negligence. Cf. Keel v.Banach, 624 So.2d at 1030 (Allowable damages in an action alleging "wrongful birth" include "the extraordinary expenses [the parents] incur because of the child's unhealthy condition.").
The United States Supreme Court has decided that amother has a right under certain circumstances not to give birth to her child. Neither the United States Supreme Court nor the Supreme Court of Alabama has ever ruled that a medical provider, or for that matter a mother, can engage, with some blanket of constitutional protection, in negligent or reckless conduct that deforms or injures a child so long as the deformity or injury is inflicted on the child before it leaves the womb. To embrace this position as the law of the land in Alabama would give license to those who would undertake to end the life of an unborn child to do so as carelessly or recklessly as they wish without bearing any responsibility to those who are injured or deformed as a result and who are left to cope with the consequences of the provider's wrongful acts. It would be hard to imagine a more troubling development in our law.
Based on the foregoing, we conclude that the circuit court erred when it determined that L.K.D.H., on behalf of J.L.D., could not, as a matter of law, state a claim for injuries that J.L.D. suffered as a result of the alleged wrongful conduct of Planned Parenthood.
The circuit court's judgment is due to be affirmed as to L.K.D.H.'s individual claims. As to the summary judgment on the claims asserted on behalf of J.L.D., the circuit court's judgment is due to be reversed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
BRYAN, J., concurs.
THOMPSON, J., concurs in part and concurs in the result in part, with writing.
PITTMAN, J., concurs in part and concurs in the result in part, with writing, which CRAWLEY, P.J., joins.
THOMPSON, Judge, concurring in part and concurring in the result in part.
In granting the summary-judgment motion presented by Planned Parenthood as to the claims asserted on behalf of J.L.D., the trial court erred when it relied solely on Elliott v.Brown, 361 So.2d 546 (Ala. 1978), and considered the cause of action brought by L.K.D.H. on behalf of J.L.D. to be a wrongful-life action. The realities of the situation presented in this case are that, despite efforts to eliminate the pregnancy, a child was born alive with a heart defect. It is generally recognized that negligence resulting in the live birth of a deformed or defective child is actionable. See Keel v.Banach, 624 So.2d 1022 (Ala. 1993) (recognizing cause of action in Alabama for wrongful birth); see also Cardwellv. Welch 25 N.C.App. 390, 391, 213 S.E.2d 382, 383
(1975)(recognizing, like "virtually all American jurisdictions, a right of action in a child to recover for its prenatal injuries caused by the tortious act of another"); andWomack v. Buchhorn, 384 Mich. 718, 187 N.W.2d 218
(1971) (setting forth a detailed discussion of holdings of other jurisdictions regarding a negligence action for prenatal injuries brought on behalf of a surviving child). A duty of reasonable care is owed to the mother as well as to the child.Keel v. Banach supra.
With regard to the remainder of the main opinion, I concur to affirm the trial court's summary judgment in favor of *Page 162 
Planned Parenthood on L.K.D.H.'s individual claims.
[1] As noted above, the circuit court struck Dr. Mankin's affidavit on the ground that L.K.D.H. had failed to comply with the July 2004 scheduling order. L.K.D.H. has not adequately argued, or cited any legal authority that would support an argument, that the circuit court's basis for striking Dr. Mankin's affidavit was erroneous. See Rule 28(a)(10), Ala. R. App. P.; see also Robbins v. Sanders,927 So.2d 777, 785 (Ala. 2005) ("It is the obligation of an appellant adequately to identify and to argue the nature of any asserted error, citing in the process relevant supporting legal authority."). Thus, we have not considered whether the circuit court erred by striking Dr. Mankin's affidavit on the ground asserted.
[2] L.K.D.H. did not answer that the injury was that J.L.D. was born; rather, she stated that "[J.L.D.] has a small hole in her heart and when she was born there was tube inverted that led from her lungs to her heart causing her body not to be able to receive enough oxygen." Planned L.K.D.H.S answers to interrogatories in support of its July 2004 summary-judgment motion as to the claims asserted on behalf of J.L.D.
[3] Although Alabama recognizes a cause of action for "wrongful birth," i.e., "a claim for relief by parents
who allege they would have avoided conception or would have terminated the pregnancy but for the negligence of those charged with prenatal testing, genetic prognosticating, or counseling parents as to the likelihood of giving birth to a physically or mentally impaired child," Keel v. Banach,624 So.2d 1022, 1024 (Ala. 1993) (emphasis added), the present case does not involve such a cause of action. As our Supreme Court stated in Keel,
 "The nature of the tort of wrongful birth has nothing to do with whether a defendant caused the injury or harm to the child, but, father, with whether the defendant's negligence was the proximate cause of the parents' being deprived of the option of avoiding a conception or, in the case of pregnancy, making an informed and meaningful decision either to terminate the pregnancy or to give birth to a potentially defective child."
624 So.2d at 1029.